## 59522. HEARN v. CITIZENS & SOUTHERN NATIONAL BANK.

CARLEY, Judge.

In November of 1976 the appellee-C. & S. Bank (bank) loaned the sum of $100,000 to the TFM Corporation (TFM), the bank taking a 90-day note for that amount. Appellant-Hearn, then chairman of the board of TFM, executed a contemporaneous contract of guaranty, which recited in part as follows: "FOR VALUE RECEIVED, the sufficiency of which is hereby acknowledged, and in consideration of any loan or other financial accommodation heretofore or hereafter at any time made or granted to [TFM] by The Citizens and Southern National Bank . . ., the undersigned hereby unconditionally guarantee(s) the full and prompt payment when due, whether by declaration or otherwise, and at all times hereafter, of all obligations of [TFM] to the Bank, however and whenever incurred or evidenced, whether direct or indirect, absolute or contingent, or due or to become due (collectively called 'Liabilities'), . . . The right of recovery against the undersigned is, however, limited to One Hundred Thousand and no/100 Dollars ($100,000.00) of the principal amount of the Liabilities plus the interest on such amount . . . Undersigned hereby represents that loans or other financial accommodations by the Bank to [TFM] will be to the direct interest and advantage of the undersigned . . . The Bank may, *from time to time, without notice to the undersigned . . . (c) extend or renew for any period (whether or not longer than the original period),* alter or exchange any of the Liabilities . . . The undersigned hereby expressly waive(s) . . . (c) presentment, demand, notice of dishonor, protest, and *all other notices whatsoever,* and (d) *all diligence in collection or protection* of or realization upon the Liabilities or any thereof, any obligation hereunder, or any security for any of the foregoing . . . No delay or failure on the part of the Bank in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Bank of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy. No action of the Bank permitted hereunder shall in any way impair or affect this guaranty . . . Wherever possible each provision of this guaranty shall be interpreted in such a manner as to be effective and valid under applicable law . . ." (Emphasis supplied.)

When the ninety day term of the original note had expired, TFM executed, on March 31, 1977, a demand note for $100,000. Thereafter, the bank's officials and Hearn were in contact concerning repayment of the loan. However, TFM made no voluntary payment of the note. When the bank advised Hearn that it

would not delay action unless a reduction in the outstanding balance was made, Hearn requested an opportunity to persuade another of TFM's creditors, which had a security interest in all corporate assets, to allow a principal reduction on TFM's indebtedness to the bank. The bank agreed to allow Hearn to pursue this course of action. Hearn failed to contact the bank within the specified time concerning this possible reduction in the indebtedness.

On June 20, 1978, Hearn transmitted to the bank's official handling TFM's indebtedness a letter referring to the note, indicating the county of residence of the corporation's registered agent, and stating that "I . . . would appreciate your proceeding to collect the currently outstanding principal and interest balance from TFM Corporation so that this debt will be discharged in full."

Following the bank's receipt of this letter from Hearn, meetings between the bank's officials and Hearn were held concerning repayment of TFM's loan. Hearn agreed to discuss the matter with TFM's president, who had executed an identical guaranty contract to that executed by Hearn guaranteeing TFM's liability to the bank in the amount of $100,000. Hearn failed to contact the bank's officials on designated dates with the other surety's response. Finally, on November 29, 1978, Hearn called the bank and advised that he had spoken with the other surety and he would not make any promise concerning TFM's repayment. Hearn was informed that the bank would institute suit against TFM on the note and against Hearn and the other surety on their guaranty contracts. Hearn requested a delay until December 1, 1978, in order that he could have one more opportunity to speak with the other surety. On December 1, 1978, Hearn's attorney advised the bank that Hearn would not be offering a repayment proposal. On December 5, 1978, the bank instituted suit against TFM on the note and against Hearn on his guaranty contract. A default judgment was obtained against TFM. Both the bank and Hearn moved for summary judgment. The trial court granted the bank's motion and denied Hearn's. Hearn appeals from the trial court's orders disposing of the motions for summary judgment.

Hearn's argument on appeal is that the letter he sent to the bank on June 20, 1978, quoted in pertinent part above, was in compliance with the mandate of Code Ann. § 103-205 and that, when the bank failed to institute suit against TFM on the note within three months thereafter, Hearn, as surety, was thereby discharged on his contract. Code Ann. § 103-205 provides: "Any surety, guarantor, or indorser, at any time after the debt on which he is liable becomes due, may give notice in writing to the creditor, his agent, or any person having possession or control of the obligation, to proceed to collect

the same from the principal, or any one of the several principals liable therefor; and if the creditor or holder refuses or fails to commence an action for the space of three months after such notice (the principal being within the jurisdiction of this State), the indorser, guarantor, or surety giving the notice, as well as all subsequent indorsers and all cosureties, shall be discharged. No notice shall be considered a compliance with the requirements of this section which does not state the county in which the principal resides."

Assuming without deciding that the letter of June 20, 1978, (in which Hearn expresses that he "would appreciate [the bank's] proceeding" against TFM) complies with the statutory intent of Code Ann. § 103-205 (which provides that the surety give notice "to proceed to collect [the debt] from the principal") (see in this connection, *Findlay v. Parker,* 24 Ga. 333 (1857); *Smith v. Morris Fertilizer Co.,* 18 Ga. App. 217, 218 (1a) (89 SE 174) (1916)), we find that Hearn cannot claim the benefit of this statutory notice provision.

Code Ann. § 103-205 operates as the extinguishment of a remedy, and not of a right, and is, therefore, "in the nature of a limitation of actions." *Overstreet v. W. T. Rawleigh Co.,* 75 Ga. App. 483, 488 (43 SE2d 774) (1947). In this case, we find *Armour Fertilizer Works v. Bond,* 139 Ga. 246 (77 SE 22) (1913), to be controlling on the issue of whether Hearn can successfully invoke the shorter "statute of limitation" contemplated in Code Ann. § 103-205 by the giving of notice to the bank to proceed against TFM. In *Armour Fertilizer* the surety had executed the following contract of guaranty: " 'For value received the undersigned jointly and severally hereby guarantee the payment of the within note at maturity . . . and consent that the holder may grant any extension on within note that he deems proper. . . .' " *Armour Fertilizer, supra,* 247. This language in the guaranty contract was interpreted as, in effect, estopping the surety to invoke the predecessor of Code Ann. § 103-205 and claim the benefit of the shorter "statute of limitation." "Ordinarily, under the provisions of the code section referred to, the surety could have given the notice to bring suit under that statute, and a failure to commence action for the space of three months after the notice would result in the discharge of the surety giving the notice from all liability. But where the surety has, as in the present case, for value received consented 'that the holder may grant any extension . . . that he deems proper' on the note upon which the party claiming the benefit of the statute appears as a surety, he is bound by the written stipulation in which he consents to any extension of time, and he can not afterwards at will revoke the written consent which he has given, directly or by

implication, as by giving the notice to sue immediately. At the time of extending credit to the principal debtor the [creditor] had the right to protect himself against such a defense as is set up in the present case; and we are of the opinion that the [creditor], in securing for a valuable consideration the consent embodied in the writing above set out, has secured to himself complete protection against the plea of the surety based upon the ground above stated." *Armour Fertilizer Works v. Bond,* 139 Ga. 246, 247, supra.

As we interpret *Armour Fertilizer,* where the surety has in his contract consented that the creditor may, within his discretion, extend the period of time within which the principal's indebtedness is due, the surety will be estopped to give notice under Code Ann. § 103-205 after the date the debt is due and claim the benefit of the shorter three-month "statute of limitation" within which the creditor must thereafter bring suit against the principal. Having agreed in his contract of guaranty that the creditor may grant the principal an extension of time within which to satisfy the obligation, the surety may not "revoke the written consent" by giving notice under Code Ann. § 103-205 and insist that the creditor bring suit against the principal within three months. In the contract of guaranty in the instant case Hearn consented that "[t]he Bank may, from time to time, without notice to [Hearn] . . . extend or renew for any period (whether or not longer than the original period), . . . the [obligations of TFM to the Bank.]" Having so consented, Hearn may not, by giving notice under Code Ann. § 103-205, withdraw that consent, insist that the bank bring suit within three months against TFM, and later claim that his obligation on the guaranty contract has been discharged because suit was not instituted within the statutory period.

We find Hearn's attempts to distinguish *Armour Fertilizer* unpersuasive. It is first urged that the pertinent language of the surety contract in *Armour Fertilizer* was supported by "valuable consideration" and that the issue of consideration and its value remains as a fact question in the instant case precluding the grant of summary judgment. However, under the terms of the instant contract Hearn obligated himself as a surety and, therefore, the receipt by TFM of the loan funds constituted sufficient consideration to bind Hearn to its terms. *Oliver v. Citizens DeKalb Bank,* 150 Ga. App. 437 (258 SE2d 204) (1979).

Hearn further contends that the subsequent enactment of Code Ann. § 109A-3—118 (f) is a limitation on the applicability of *Armour Fertilizer.* That statute provides, in part: "The following rules apply to every *instrument: . . . Unless otherwise specified* consent to extension authorizes a single extension for not longer than the

original period." (Emphasis supplied.) Even assuming that the rule of construction provided for in this statute applies to Hearn's contract of guaranty, the provision in the contract whereby Hearn agreed to extension or renewal for any period "(whether or not longer than the original period)" is clearly a specification "otherwise" within the contemplation of Code Ann. § 109A-3—118 (f).

We likewise find without merit the argument that fact questions remain as to the "intent" of the parties with reference to the pertinent language of the contract. *Glenn v. Maddux,* 149 Ga. App. 158 (253 SE2d 835) (1979).

We find the grant of summary judgment to the bank and the denial of summary judgment to Hearn not to be erroneous for any reasons urged on appeal. Other enumerations of error need not be addressed.

*Judgment affirmed. Quillian, P. J., and Shulman, J., concur.*

ARGUED MARCH 3, 1980 — DECIDED MAY 7, 1980 — REHEARING DENIED MAY 20, 1980 —

*Herman L. Fussell, Charles V. Choyce, Jr.,* for appellant.
*Karen Wildau, Arthur T. Davis, Jr., Jerry B. Blackstock,* for appellee.