66054. COTTON STATES MUTUAL INSURANCE COMPANY v. CITIZENS & SOUTHERN NATIONAL BANK.

DEEN, Presiding Judge.

Cotton States Mutual Insurance Co. (Cotton States), appellant here, was surety for Georgia-Carolina Railroad Contractors, Inc.

(Georgia-Carolina), on a federal government construction project on which Georgia-Carolina was a prime contractor. Periodic progress payments were deposited in two checking accounts which Georgia-Carolina had opened with Citizens and Southern National Bank (C & S), appellee here, some years prior to entering into the contracts relevant to this appeal. Upon Georgia-Carolina's failure to make the monthly payments due upon two notes representing an existing indebtedness to C & S, the bank accelerated the notes and set off the funds in the two checking accounts against the balance due on the notes, thereafter dishonoring checks drawn by Georgia-Carolina. Approximately eight days later, Georgia-Carolina notified Cotton States that it could not meet its obligations for materials and payroll. Cotton States, pursuant to the terms of payment and performance bonds it had executed in Georgia-Carolina's behalf, made the necessary payments on bills then due and coming due in subsequent weeks.

Cotton States brought an action against C & S for the sums set off, alleging that the bank had acted in wilful derogation of Cotton States' subrogation rights and had wrongfully set off trust funds (i.e., funds intended for payroll use), and seeking not only the total amount set off but also punitive damages and attorney fees. The court below granted C & S' motion for summary judgment and denied that of Cotton States. Cotton States' sole enumeration of error on appeal is the trial court's action in denying its motion and granting that of appellee.

In assigning the trial court's ruling as error, Cotton States contends that the funds in one of its two checking accounts (account #021-02-432) were "trust funds" and therefore not subject to set-off. Both accounts in question had been opened in August of 1970. Account # 021-02-432 bore the designation "Payroll Account"; according to the testimony of bank officials, however, this designation was made merely for the customer's convenience and had no significance in terms of the bank's records. Cotton States offered testimony that account #048-07-285 was used for general operating expenses but that #021-02-432 was used solely for payroll.

In July 1977 Georgia-Carolina executed two promissory notes and accompanying security agreements to C & S in return for a loan of $530,000, which consolidated prior indebtednesses incurred between October 1973 and June 1976. In March 1977 Georgia-Carolina had executed an Agreement of Indemnity in favor of Cotton States, and in April and June of 1978, Cotton States, as surety pursuant to the Miller Act, 40 USCA §§ 270a, 270b, executed performance and payment bonds on behalf of Georgia-Carolina, to ensure Georgia-Carolina's performance of work and payment for labor and

materials under its government contracts, which had been entered into in 1977.

In May 1978 Georgia-Carolina defaulted on its notes to C & S, and on March 20 and 21, 1979, the bank accelerated the outstanding obligation and set off funds from both Georgia-Carolina's checking accounts. Appellant alleges that, although the deposit agreements governing the respective accounts were identical and indicated no difference between the two, the so-called "payroll account" (#021-02-432) contained funds intended and used for payroll purposes only, and that such funds were trust funds. Appellant further alleges that the bank had both actual and constructive knowledge that Georgia-Carolina was in default on its government contracts, an allegation which C & S vehemently denies.

The record contains a letter from Georgia-Carolina's president, bearing the date March 29, 1979, notifying Cotton States of its inability to meet its payroll or to pay its bills, and requesting the assistance of Cotton States. C & S adduced evidence that Georgia-Carolina was never formally declared in default on its government contracts but completed its work, albeit after the dates specified in the contracts.

In its brief submitted to this court, Cotton States urges the following points: (1) the court erroneously failed to sustain Cotton States' rights of subrogation; (2) Cotton States must prevail because the default occurred while the disputed funds were in the government's hands; (3) Cotton States is entitled to the funds set off because C & S converted funds belonging to the United States under 26 USCA § 7512; (4) Cotton States is subrogated to the statutory lien prescribed in 10 USCA,§ 7521; (5) Cotton States is subrogated to the materialmen's and suppliers' equitable liens on the funds set off; and (6) the funds set off were trust funds which were not subject to set-off in satisfaction of Georgia-Carolina's indebtedness. *Held:*

1. There can be no question that Cotton States, as surety for Georgia-Carolina, has subrogation rights with respect to any funds earned and paid to the contractor and still in the contractor's hands. OCGA §§ 10-7-56, 10-7-57 (Code Ann. §§ 103-501, 103-502); Pearlman v. Reliance Ins. Co., 371 U. S. 132 (83 SC 232, 9 LE2d 190) (1962); *Argonaut Ins. Co. v. C & S Bank,* 140 Ga. App. 807 (232 SE2d 135) (1976); Aetna Cas. & Surety Co. v. Atlantic Nat. Bank of W. Palm Beach, 430 F2d 574 (5th Cir. 1970); Royal Indemnity Co. v. United States, 371 F2d 462 (Ct. Cl. 1967); Kane v. First Nat. Bank, 56 F2d 534 (5th Cir. 1932). Whether or not the surety has made a filing pursuant to Article 9 of the Uniform Commercial Code (OCGA § 11-9-101 et seq. (Code Ann. § 109A-9—101 et seq.)) is of no consequence, as the relevant Code sections are intended to preserve

and protect the surety's right of subrogation. *Pembroke State Bank v. Balboa Ins. Co.,* 144 Ga. App. 609 (241 SE2d 483) (1978); *Argonaut Ins. Co. v. C & S Bank,* supra.

Until the surety is called upon to perform its obligation under a payment or performance bond, however, the right of subrogation is an inchoate one, which becomes choate only upon the maturing and performance of the obligation to pay. *Hull v. Myers,* 90 Ga. 674 (16 SE 653) (1893); *Conley v. Kelley,* 43 Ga. App. 822 (160 SE 532) (1931). In the instant case, this occurred on or about March 29, 1982, the day that Georgia-Carolina notified Cotton States of its inability to pay the sums due and owing to materialmen, suppliers, and workers. This was more than a week after the set-offs of March 20 and 21. Because the right of subrogation matured, or became choate, simultaneously with the principal's invoking the surety's obligation to pay and the surety's discharge of that obligation, Cotton States' title to any earned retentions in Georgia-Carolina's hands as of March 29 is clearly superior to that of the lender bank.

Cotton States contends on this appeal, however, that the right of subrogation applies not only to earned retentions as of the day of any set-off of deposited funds that the lender bank may make, but also to any funds, deposited or undeposited, that may have been paid to the principal since some speculative date (here, appellant argues, January 1, 1979) in the past when the principal may have begun to manifest symptoms of a liquidity problem, and that this earlier date is actually the date of the default. It may be ultimately true, of course, that according to the rationale of the ancient rhyme "For want of a nail, the . . . kingdom was lost," the default in Georgia-Carolina's obligations to its suppliers and workers which Cotton States was called upon to cover on March 29 may be traceable to events or business decisions and practices occurring on a date or dates far antecedent to that on which Cotton States' suretyship obligation was invoked. Human experience demonstrates that the etiology of almost any situation is complex and multi-faceted and ultimately attributable to incidents remote in time, space, or chain of causation. In this sense a given situation may be said to have had its genesis at a time long before it manifests itself.

This is not the sort of logic on which the law operates, however. Relevant law in this area is quite clear: although no formal declaration of default is required, default in the relevant sense occurs only when the principal finds itself unable to pay and calls upon the surety to pay in accordance with the terms of the bond. In re J. V. Gleason Co., 452 F2d 1219 (8th Cir. 1971); *Hull v. Myers,* supra; *Conley v. Kelley,* supra; Royal Indemnity Co. v. United States, supra. In the instant case, the set-offs were made on March 20 and 21;

Georgia-Carolina notified Cotton States of its inability to meet its obligations on March 29; and approximately one week later Cotton States had begun paying the bills and had notified the Navy that progress payments should thenceforth be sent to Cotton States rather than to Georgia-Carolina. Therefore, contrary to Cotton States' contention, the default occurred on March 29, and Cotton States' claim to any funds, from any source whatsoever, which had been deposited with the lender bank prior to that date is inferior to that of the lender bank. Absent an affirmative showing (and none has been made in this case) that the bank had reason to know that the funds on general deposit in Georgia-Carolina's accounts were in the nature of trust funds, the bank had a right to set these funds off against the matured indebtedness. In re Applied Logic Corp., 576 F2d 952 (2d Cir. 1978); National Shawmut Bank of Boston v. New Amsterdam Cas. Co., 411 F2d 843 (1st Cir. 1969). Contrary to appellant's assertions, such a set-off does not constitute a conversion, whether from Cotton States, from Georgia-Carolina's other creditors, or from the United States government.

2. It is well settled in this state, as in a sizeable number of other jurisdictions, that unless funds deposited with a lending bank are in an account governed by an agreement which designates the funds as trust funds, or unless the lending bank by other means has actual knowledge that the funds deposited in a general account are intended to discharge a specific obligation or otherwise partake of the character of trust funds, then the funds are treated as any other general deposit funds, are commingled with other funds on deposit with the bank, and are subject to set-off against any matured indebtedness for which the bank is creditor to the principal. *Briggs v. Southern Bakeries Co.,* 227 Ga. 663 (182 SE2d 459) (1971); *C & S Nat. Bank v. Weyerhaeuser Co.,* 152 Ga. App. 176 (262 SE2d 485) (1979); *Georgia Bank & Trust Co. v. Hadarits,* 111 Ga. App. 195 (141 SE2d 172) (1965); In re Applied Logic, supra; Aetna Cas. & Surety Co. v. Atlantic Nat. Bank of W. Palm Beach, supra; Kane v. 1st Nat. Bank, supra.

In the instant case the two checking accounts opened by Georgia-Carolina in 1970 are governed by identical deposit agreements which contain no language indicating that either account is anything other than a general account. Appellant has submitted for the record a photographic copy of a bank statement for account #021-02-432 (the so-called "payroll account") captioned "Georgia-Carolina Railroad Contractors Inc. Payroll Account" and argues on this basis that the bank had knowledge of the nature of the funds deposited therein. Appellant offers no evidence (such as, for instance, a deposit agreement or other document characterizing this account as

a trust account) to rebut the bank's assertion that the caption of a given account is phrased as the customer dictates, and as an accommodation to him. Nor does appellant Cotton States submit any other evidence in support of its contention that the bank had any detailed knowledge of either the sources or the disposition of any of the funds in either account. We find to be without merit appellant's allegation that C & S' knowledge of Georgia-Carolina's financial situation vis-a-vis current obligations to suppliers and workmen is demonstrated by the bank's request that Cotton States guarantee a letter of credit which Georgia-Carolina had requested the bank to issue to cover the purchase of an expensive piece of equipment essential to completion of the government contracts. Any prudent lender, with or without knowledge of the debtor's financial posture with respect to other creditors, would likely have been hesitant to extend additional credit to a debtor already seriously in arrears, without first seeking assurance from the surety that the obligation would be covered.

Moreover, even were we to decide, *arguendo,* that C & S had intimate knowledge of Georgia-Carolina's financial situation and of the arguably limited purpose for which the "payroll account" was used, Cotton States would be entitled to recover only the lesser amount that was set off from account #021-02-432 ("payroll account"), or $15,958.04, rather than the total amount set off from both the "payroll account" and the "general account," or $162,741.19. Thus, at most, appellant would be entitled to less than ten percent of the sum it seeks to recover from C & S. Neither at trial nor on appeal does appellant acknowledge this distinction.

3. We find without merit appellant's remaining contentions. Because Georgia-Carolina fully performed the work required under its government contracts, the United States has no statutory lien under 10 USC § 7521 to which Cotton States can be subrogated. Similarly, because Cotton States paid the materialmen and suppliers, neither of the latter has a lien to which Cotton States can be subrogated. See United States v. Munsey Trust Co., 332 U. S. 234 (67 SC 1599, 91 LE 2022) (1947).

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED SEPTEMBER 6, 1983 —
REHEARING DENIED SEPTEMBER 22, 1983 — ▮▮▮▮▮▮

*John V. Burch, John C. Bach,* for appellant.
*W. Terrence Walsh, J. Scott Jacobson,* for appellee.