### 70510. NATIONAL CITY BANK OF ROME v. BUSBIN.
(332 SE2d 678)

BANKE, Chief Judge.

John Busbin sued the National City Bank of Rome to recover damages for the bank's alleged wrongful appropriation of certain funds belonging to him. The funds in question were applied by the bank to reduce the balance due on a note which Busbin had endorsed as an unconditional guarantor. The complaint, as presently cast, is based on five separate, and to some extent redundant, causes of action: Money had and received, breach of contract, breach of fiduciary duty, conversion, and unjust enrichment. The bank filed a counter-claim asserting a right of setoff, based on the indebtedness which would remain owing on the note in the event Busbin prevailed on his claim. Both sides moved for summary judgment on all counts of the complaint. The trial court granted Busbin's motion as to Count 4 of the complaint (conversion) but declined to grant summary judgment to either side on the remaining counts. The bank filed this appeal. A third-party action remains pending by the bank against the maker of the note in question, Thomas Bennett, Jr.; however, none of the issues involved in that action are presently before us.

The salient facts may be summarized as follows. Busbin, Thomas Bennett, Jr., and Jack McGuffey were principals in a construction firm doing business as Bennett, Busbin & McGuffey Corporation. On January 28, 1974, he and the corporation jointly executed a promissory note to the bank in the amount of $350,000, secured by a security deed to certain real estate which Busbin owned. By its express terms, this security deed applied not merely to the $350,000 note but to all other present and future indebtedness Busbin owed or might owe to the bank. On February 17, 1976, with the bank's consent, Busbin sold the land which was the subject of this security deed to Houston Ro-

zelle, Jr., and John H. Tolan, Jr., accepting from them, as partial consideration for the sale, their promissory note and security deed for $256,937. Busbin assigned this note and security deed to the bank, which in turn cancelled the existing security deed which he had previously executed on the property. The bank contends that, like the security deed it replaced, this assignment of the Rozelle-Tolan note and security deed was intended to secure all Busbin's existing and future indebtedness to the bank. Busbin, on the other hand, maintains that the bank orally agreed to apply the payments received on the Rozelle-Tolan note only to his personal loan indebtedness and not to any indebtedness for which he might be liable as an endorser or accommodation party.

In April of 1977, Busbin, Bennett, and McGuffey decided to apportion among themselves various debts to the bank which they and their corporation had incurred jointly over the years. Toward this end, acting with the bank's consent, they executed various new notes in satisfaction of various old ones. Among these was a note excuted by Bennett in the amount of $46,561.84, which Busbin endorsed as unconditional guarantor. It is this note which is at the center of the controversy giving rise to this litigation.

On November 25, 1977, the bank applied towards the balance owing on the Bennett note $2,063.07 from the payments it had received by virtue of the assignment of the Rozelle-Tolan note. Previously, it had applied such receipts only towards Busbin's indebtedness on notes he had signed as maker. The Bennett note was past due when the bank took this action. On December 11, 1978, at a time when the note was again past due, the bank applied $17,304.94 from the Rozelle-Tolan receipts towards it. Busbin asserts that by this time, all of his indebtedness to the bank on notes he had executed as maker had been paid and that, pursuant to his alleged oral agreement with the bank, the bank had no right to retain these funds for any purpose. The trial court granted Busbin's motion for summary judgment with respect to this $17,304.94 payment only. *Held*:

1. The bank's application of the Rozelle-Tolan income to reduce the indebtedness owed on the Bennett note may be considered a conversion to the extent it was not authorized by Busbin under the terms of the assignment, a conversion being any distinct act of dominion asserted over another's property in denial of his right or inconsistent with it. See generally *Lovinger v. Hix Green Buick Co.*, 110 Ga. App. 698, 699 (140 SE2d 83) (1964); *Cobb Exchange Bank v. Byrd*, 108 Ga. App. 825, 827 (134 SE2d 871) (1964). Of course, to the extent the bank's actions were in violation of the terms of the assignment, they may also be considered a breach of contract. In such circumstances, the aggrieved party has the right to elect which cause of action to pursue. See generally OCGA § 51-1-8; *Mauldin v. Sheffer*, 113 Ga.

App. 874, 878 (150 SE2d 150) (1966); *Sam Finley, Inc. v. Barnes*, 156 Ga. App. 802 (1) (275 SE2d 380) (1980). Such election need not be made until after the return of a verdict. See OCGA § 9-2-4; *D. H. Overmyer Co. v. Kapplin*, 122 Ga. App. 51 (1) (176 SE2d 207) (1970); *UIV Corp. v. Oswald*, 139 Ga. App. 697 (229 SE2d 512) (1976). See also OCGA § 9-11-8 (e) (2).

2. It is undisputed that the assignment of the Rozelle-Tolan note was not absolute but was made for the sole purpose of securing payment of Busbin's indebtedness to the bank. The central issue in the case is whether the indebtedness which was intended to be secured included all such indebtedness to the bank or merely his indebtedness on notes signed by him as maker. There being no written agreement or memorandum purporting to cover the matter, parol evidence would be admissible to determine the intention of the parties. See generally OCGA § 24-6-2. Because the parol evidence of record is conflicting, it follows that a material issue of fact remains for jury resolution. The trial court consequently erred in granting summary judgment to Busbin on Count 4 of the complaint.

3. We reject the bank's contention that, regardless of what its agreement with Busbin may have been concerning the scope of the assignment, it was authorized to apply the Rozelle-Tolan funds towards the Bennett note pursuant to a right of "setoff." The term "setoff" has two possible meanings in the context of this case. The first is with reference to "the well-settled rule, that 'a bank may apply the amount of the account of one of its depositors to a matured debt owed by him to the bank, without reference to the insolvency of the depositor.' (Cits.)" *Milhouse v. Citizens Bank of Valdosta*, 14 Ga. App. 240 (80 SE 703) (1913). Such a right exists "whether the indebtedness of the depositor be that of a principal or upon an obligation on which he is only secondarily liable." Id. at 241. See also *Murphy v. Bank of Dahlonega*, 151 Ga. App. 264 (259 SE2d 670) (1979). However, the right has application only to general deposit funds, which are commingled with other funds on deposit with the bank, and not to receipts which are designated as trust funds or are received by the bank with knowledge that they are intended to discharge a particular obligation, such that they partake of the character of trust funds. See *Cotton States Mut. Ins. Co. v. C & S Nat. Bank*, 168 Ga. App. 83, 87 (2) (308 SE2d 199) (1983). See also *American Surety Co. of N.Y. v. Bank of Dawson*, 43 Ga. App. 593 (2) (159 SE 736) (1931). It being undisputed that Busbin had no general deposit account with the bank, such as a checking or savings account, it follows that this type of setoff has no application to this case.

The bank also asserts a right of setoff in the general sense that the parties to a suit are entitled to setoff "mutual demands existing at the time of the commencement of the suit . . ." OCGA § 13-7-5.

However, this type of setoff "does not operate as a denial of the plaintiff's claim; rather it allows the defendant to set off a debt owed him by the plaintiff against the claim of the plaintiff." OCGA § 13-7-1. As such, it must be asserted as a counterclaim rather than a defense. See *H. R. Kaminsky & Sons v. Yarbrough*, 158 Ga. App. 523 (1) (281 SE2d 289) (1981), and cases cited therein. It follows that even though Busbin may have been liable for the indebtedness to which the Rozelle-Tolan funds were applied, this would not, technically speaking, operate to defeat his claim against the bank for appropriating those funds without proper authority, even though it might preclude his recovery of any actual damages on such a claim. This is true whether the bank's claim of setoff be asserted as a legal right pursuant to OCGA § 13-7-5 or as an equitable right pursuant to OCGA § 23-2-76. See generally *McLendon v. Galloway*, 216 Ga. 261 (1) (116 SE2d 208) (1960). Nothing to the contrary appears in *Marler v. Rockmart Bank*, 146 Ga. App. 548 (246 SE2d 731) (1978). Indeed, the issue of the bank's right to a setoff was not even reached in that case.

4. We must also reject the bank's contention that its appropriation of the Rozelle-Tolan funds was authorized under the terms of Busbin's endorsement of the Bennett note. The specific provision in question appears on the back of the note, above the signature space reserved for the endorser's signature, and reads as follows: "(4) the holder may, at any time, without demand or notice of any kind appropriate and apply toward the payment of such of the liabilities, and in such order of application, as the holder may from time to time elect, any balances, credits, deposits, accounts, items, or monies of the undersigned with the holder."

Were it clear that the term "undersigned" as used in this provision encompassed endorsers as well as makers, the bank's position would be well taken. However, the language in question appears in a very long list of what may be characterized as "boilerplate" provisions dealing for the most part with the obligations of the maker; and the term "undersigned" is repeatedly used therein with reference only to the maker. There are in fact only two contractual provisions on the back of the note which have specific reference to endorsers or accommodation parties, and in neither of those provisions is the term "undersigned" used with reference to such signatories. The first such provision reads as follows: "Any obligors who are accommodation parties unconditionally guarantee the payment of this note and expressly authorize the holder hereof to grant extensions of time for its payment, to grant other indulgences, and to release from time to time all or any part of the collateral, without notice to such obligors, which extensions, indulgences and releases shall in no way affect such obligors' liabilities hereunder." The second such provision specifies that "[i]n considering the application for this loan and any renewals or advances

thereof, the bank or any holder, may review any commercial report as to credit which, in the compilation of such reports may involve interviews with friends, neighbors and associates *of the undersigned or any endorser hereof.*" (Emphasis supplied.)

It is well established that any ambiguity in a contract is to be construed against the party who drafted it. See OCGA § 13-2-2 (5); *Kennedy v. Brand Banking Co.*, 245 Ga. 496 (2), 500 (266 SE2d 154) (1980). Based on this principle of construction, we conclude that Busbin's endorsement of the Bennett note did not itself operate to convey any security interest to the bank nor otherwise authorize the bank to apply the Rozelle-Tolan receipts towards the indebtedness represented by that note.

5. Although the bank was not entitled to prevail on summary judgment, neither was Busbin. We reject Busbin's contention that the bank discharged him from liability as an endorser either by granting Bennett extensions of time to pay the loan or by granting him additional credit, in the form of overdrafts on his checking account, after the endorsement was executed. The extensions of time were expressly authorized under the express terms of the endorsement, as set forth in Division 4 of this opinion, supra. Accord *Colodny v. Dominion Mortgage &c. Trust*, 141 Ga. App. 139, 142 (4) (232 SE2d 601) (1977); *Hearn v. C & S Nat. Bank*, 154 Ga. App. 686, 689-690 (269 SE2d 486) (1980). The extension of additional credit to a borrower does not operate to discharge a guarantor of the indebtedness absent some change in the terms or conditions of the note amounting to a novation. See *Brock Candy Co. v. Craton*, 33 Ga. App. 690 (127 SE 619) (1925). Compare *Upshaw v. First State Bank*, 244 Ga. 433, 434 (260 SE2d 483) (1979).

We also reject Busbin's contention that presentment and notice of dishonor were required to perfect his obligation on the note. Where, as in this case, the endorsement constitutes an unconditional guarantee of payment, no such conditions precedent exist to the enforcement of the liability. See OCGA § 11-3-416 (5); *Mitchell v. Ringson*, 169 Ga. App. 88 (1) (311 SE2d 516) (1983); *Hazel v. Tharpe & Brooks*, 159 Ga. App. 415 (2) (283 SE2d 653) (1981); 6 Anderson, Uniform Commercial Code, § 3-511:11, p. 518 (1984 ed.). But see *Broun v. Bank of Early*, 243 Ga. 319 (253 SE2d 755) (1979), holding that guarantors are entitled to notice of intent to collect statutory attorney fees.

6. Although the bank was not entitled to summary judgment on the counts of the complaint alleging conversion and breach of contract, we hold that, no claim for equitable relief having been asserted, no separate right of recovery existed for breach of fiduciary duty. Consequently, the bank was entitled to summary judgment on that count of the complaint.

We also hold that the bank was entitled to summary judgment on the counts of the complaint seeking recovery for money had and received and unjust enrichment. Initially, we note that these are not separate causes of action. An action for money had and received is merely one form of action to recover damages based on unjust enrichment. Furthermore, it is clear from the pleadings, the briefs, and the record that the bank's authority to dispose of the Rozelle-Tolan receipts was governed entirely by the scope of Busbin's express assignment of those receipts to the bank. The bank either violated that agreement or it did not. "[T]here cannot be an express and implied contract for the same thing existing at the same time between the same parties. It is only when the parties themselves do not expressly agree, that the law interposes and raises a promise. (Cit.)" *Fonda Corp. v. Sou. Sprinkler Co.*, 144 Ga. App. 287, 292 (3) (241 SE2d 256) (1977).

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Benham, J., concur.*

DECIDED JUNE 11, 1985.

*Clinton J. Morgan*, for appellant.
*C. King Askew, Richard J. MacLeod*, for appellee.