**JOHNSON CONTROLS, INC.,
Plaintiff-Appellant,**

v.

**SAFECO INSURANCE COMPANY OF
AMERICA, Defendant-Appellee.**

No. 89-8710.

United States Court of Appeals,
Eleventh Circuit.

Oct. 2, 1990.

David R. Hendrick, Scott K. Tippett, Atlanta, Ga., for plaintiff-appellant.

John V. Burch, Matthew D. Williams, Bovis, Kyle and Burch, P.C., Atlanta, Ga., for defendant-appellee.

---

Before TJOFLAT, Chief Judge, ANDERSON, Circuit Judge, and ESCHBACH *, Senior Circuit Judge.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO GA.CODE ANN. § 15–2–9 (1985).

TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

It appears to the United States Court of Appeals for the Eleventh Circuit that this case involves a question of Georgia law which is determinative of this cause of action but unanswered by controlling precedent of the Supreme Court of Georgia. The question involves an interpretation of Ga.Code Ann. § 10–7–24 (1989), which provides for the discharge of a surety upon notice to the creditor.

The Department of the Navy contracted with Blake Construction Company ("Blake") to complete certain work at the Trident Training Facility, Naval Submarine Base, located at Kings Bay, Georgia. Blake subcontracted a portion of the total work to BCC Mechanical (the "Blake–BCC Mechanical subcontract"). BCC Mechanical in turn subcontracted a portion of the work to Johnson Controls, Inc. ("JCI"), who in turn subcontracted a portion of its work to Ocean Electric Corporation ("Ocean"). In connection with the JCI–Ocean subcontract, Safeco Insurance Company of America ("Safeco") executed a subcontractor bond. This bond identified Ocean as the principal, Safeco as the surety, and JCI as the obligee.

On July 24, 1986, after performing only a small portion of the work required under the JCI–Ocean subcontract, Ocean ceased

working on the project. In a letter dated October 14, 1986, JCI notified Ocean that it was in default of its performance obligations under Paragraph 24 of the JCI–Ocean subcontract and that therefore JCI elected to complete the project, reserving all rights against Ocean and Safeco. Exhibit A to Affidavit of Richard N. Pegram, R1–11. Paragraph 24 provides:

TERMINATION FOR DEFAULT:

If the Subcontractor refuses or fails to prosecute the work with such diligence as will insure its completion within the time specified in this contract, or any extension thereof, or fails to complete said work within such time, the Contractor may, by written notice to the Subcontractor, terminate his right to proceed with the work. In such event the Contractor may take over the work and prosecute the same to completion, by contract or otherwise, and may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor. The rights and remedies of the Contractor provided in this clause are in addition to any other rights and remedies provided by law or under this contract.

In Paragraph 30, the JCI–Ocean subcontract also provides for the incorporation of the upper tier documents as follows:

CONTRACT DOCUMENTS:

The contract documents consist of this agreement and all higher tier Subcontracts (including but not limited to the Contract between the Owner and General Contractor) and the General, Supplementary and other Conditions thereof, the drawings, specifications and all addenda issued prior to the execution of this Agreement. In the event of a conflict between the provisions of this Agreement and any of the other contract documents, this Agreement shall govern.

Article 20 of the Blake–BCC Mechanical subcontract states the remedy for breach as follows:

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

It is understood and agreed that if the Subcontractor should ... refuse or fail to supply enough properly skilled workmen or proper materials, or if he should ... disregard laws, ordinances, or the instructions of the Contractor, or otherwise be guilty of a violation of any provision of this contract, in the opinion of the Contractor, then the Contractor may, without prejudice to any right or remedy and after giving the Subcontractor three (3) days' written notice, terminate this Agreement and take possession of the premises and of all materials, tools and equipment thereon and finish the work herein contemplated by whatever method he may deem expedient. *In such case the Subcontractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the contract sum shall exceed the expense of finishing the work, including compensation for additional managerial and administrative services, such excess shall be paid to the Subcontractor. If such expense shall exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor.*

Emphasis Added.

Before JCI completed the work contemplated by the JCI–Ocean subcontract, Safeco sent JCI a letter dated November 4, 1986, which notified JCI that JCI "should proceed to collect any debt it believes it has owing to it from Ocean immediately." Exhibit B to Affidavit of Don Reedy, R1–4. In December, 1986, the Navy terminated the prime contract with Blake for default. Therefore, the continuing performance obligations of all lower tier subcontractors were terminated as of that date. JCI did not file this lawsuit until November 23, 1987.

Ga.Code Ann. § 10–7–24 provides:

Any surety, guarantor, or endorser, at any time after the debt on which he is liable becomes due, may give notice in writing to the creditor, his agent, or any person having possession or control of the obligation, to proceed to collect the debt from the principal or any one of the several principals liable therefor; and, if the creditor or holder refuses or fails to commence an action for the space of three months after such notice (the principal being within the jurisdiction of this state), the endorser, guarantor, or surety giving the notice, as well as all subsequent endorsers and all cosureties, shall be discharged. No notice which does not state the county in which the principal resides shall be considered a compliance with the requirements of this Code section.

JCI does not dispute that Safeco's letter dated November 4, 1986, contained all the information required by § 10–7–24. However, JCI contends that Safeco's notice under that section was premature because the debt was not yet due as of the time of Safeco's November 4, 1986 notice, and thus the notice did not satisfy the statute's requirement that notice be given after the debt becomes due. JCI contends that the debt was not due until December, 1986, because JCI had elected the remedy of completing the job, thus triggering the provisions of Article 20 of the Blake–BCC Mechanical Subcontract which contemplate that payment of amounts due will be deferred until the work is finished, which was in December, 1986.[1] JCI contends that the foregoing Article 20 remedy precludes the operation of § 10–7–24, in that Safeco's execution of the bond constituted consent to the remedies set forth in the contract documents including the Art. 20 remedy; having consented to the Art. 20 remedy which allows JCI to complete the job and then sue Ocean for the amount due upon completion of the work, Safeco cannot now accelerate that procedure by invoking § 10–7–24. *Hearn v. Citizens & Southern Nat'l Bank,* 154 Ga.App. 686, 269 S.E.2d 486 (1980).

On the other hand, Safeco contends that the debt was due at the time of its November 4, 1986 notice and thus that its notice was timely. Although Safeco does not dis-

---

1. It is not disputed that the work was unfinished as of November 4, 1986, and that it was not finished before December, 1986, when the entire job was terminated.

pute that Art. 20 of the Blake–BCC Mechanical Subcontract was incorporated as part of the JCI–Ocean Subcontract, it does contend that the Art. 20 remedy of completing the job and deferring payment until the work is completed is inconsistent with the remedies provided in the JCI–Ocean Subcontract, and thus only the latter remedies were available to JCI. Safeco also contends that, even if JCI properly exercised the Art. 20 remedy, JCI also had alternative remedies available as of November 4, 1986, including the remedy of immediately suing Ocean for the damages resulting from Ocean's default. Because JCI could immediately sue Ocean, Safeco contends that the § 10–7–24 statute of limitations, like any other statute of limitations, began to run. Finally, Safeco contends that, even if JCI properly exercised the Art. 20 remedy, the fact that that remedy defers settlement of the amount due until the work is finished merely constitutes a deferral of the determination of the amount of the debt. Under the reasoning of *A.J. Kellos Const. Co. v. Balboa Ins. Co.*, 661 F.2d 402 (5th Cir.1981),[2] Safeco contends that mere deferral of determination of the amount of the debt does not affect the timeliness of a § 10–7–24 notice.

The Georgia Supreme Court has not resolved the question of whether § 10–7–24 operates to require a creditor to file suit notwithstanding the fact that the creditor has selected an available remedy which contemplates deferral of payment. Since resolution of this question would be determinative of this cause of action, we certify the following question to the Supreme Court of Georgia:

> IN THE CONTEXT OF A PERFORMANCE AND PAYMENT BOND IN THE CONSTRUCTION INDUSTRY, WHEN A CREDITOR HAS SELECTED AN AVAILABLE CONTRACTUAL REMEDY WHICH CONTEMPLATES DEFERRAL OF THE TIME FOR PAYMENT, DOES GEORGIA CODE ANN. § 10–7–24 (1989) OPERATE TO REQUIRE THE CREDITOR TO FILE SUIT WITHIN THE SECTION'S THREE MONTH TIME PERIOD, ON PAIN OF DISCHARGING THE SURETY, NOTWITHSTANDING THE CONTRARY PROVISIONS OF THE SELECTED REMEDY?

We do not intend the particular phrasing of this question to limit the Supreme Court of Georgia in its consideration of the problems posed by the entire case. In order to assist the court's consideration of the question, the entire record, along with the parties' briefs, shall be transmitted to the Supreme Court of Georgia.

IT IS SO ORDERED.

---

**2.** This former Fifth Circuit case was decided after the close of business on September 30, 1981, and is binding precedent under *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982).