A98A2216, A98A2217. GOULDSTONE et al. v. LIFE INVESTORS INSURANCE COMPANY OF AMERICA; and vice versa.
(514 SE2d 54)

RUFFIN, Judge.

Life Investors Insurance Company of America sued Debbie Gouldstone and DeCraig Corporation, alleging that they defaulted on a promissory note. Defendants answered, raising defenses of duress,

failure of consideration, and setoff. Defendants also counterclaimed, alleging that plaintiff breached a separate lease agreement. The trial court granted partial summary judgment to plaintiff on its main claim and denied plaintiff's motion for summary judgment on defendants' counterclaims. In Case No. A98A2216, defendants appeal the grant of partial summary judgment to plaintiff on its claim under the promissory note. In Case No. A98A2217, plaintiff appeals the denial of its motion for summary judgment on defendants' counterclaims. For reasons which follow, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Viewed in a light most favorable to the nonmoving parties, Gouldstone and DeCraig, the evidence shows that on or about September 24, 1993, DeCraig leased part of a shopping center from Life Investors. There is no copy of the purported lease in the record. In April 1995, a fire broke out in the shopping center. Gouldstone, a co-owner of DeCraig and its corporate secretary, testified that Life Investors' actions in repairing the shopping center disrupted defendants' business and caused economic losses in excess of $11,000.

According to Gouldstone, DeCraig's cash flow problems stemming from the reconstruction caused it to fall behind in its rent payments to plaintiff. Thereafter, on February 14, 1997, Gouldstone agreed in writing to pay plaintiff $200 per week until the outstanding balance of $6,098.61 was paid in full. Gouldstone testified that she and the plaintiff's property manager agreed that Gouldstone would give the property manager four post-dated $200 checks at the beginning of each month, and the manager would deposit one check each Monday. Gouldstone told the property manager that she would have $200 in her bank account each Monday so that the property manager could deposit one check at a time. Gouldstone testified that the property manager would call her each Monday to verify that the check could be deposited.

Gouldstone claimed that this arrangement worked well until plaintiff changed property managers, at which time the new manager deposited three checks at once, causing them to bounce. On May 21, 1997, plaintiff's attorney sent defendants a letter advising them that the checks had been dishonored for insufficient funds; that defendants were in default of the letter agreement and thus owed the entire $6,400.19 balance outstanding under the lease; and that plaintiff intended to seek attorney fees if such amount was not paid in full.

Plaintiff also advised defendants that unless they paid the full amount of the dishonored checks, plus a service charge of $20 for each check, within ten days, plaintiff "may file a suit against the DeCraig Corporation for two times the amount of each check, but in no case more than $500.00, in addition to the payment of each check plus any court costs."

According to Gouldstone, plaintiff's attorney contacted her and "told me that I had committed a serious offense in Georgia by giving checks to the Plaintiff when I knew the checks would not clear." Gouldstone also said that the attorney "intimated" that she "could have criminal responsibility for writing the checks that did not clear."

On May 29, 1997, plaintiff's attorney sent Gouldstone a proposed promissory note, to be executed by Gouldstone and DeCraig, in the principal amount of $6,460. The note required defendants to make semi-monthly payments in the amount of $350. In his cover letter, the attorney stated that if defendants executed the note by June 5, 1997, plaintiff would "not seek the relief set forth in my May 21, 1997 letter." Gouldstone executed the note individually and on behalf of DeCraig. Gouldstone testified that she executed the promissory note because she "was terribly worried about someone accusing me of a criminal offense," and she was afraid that the attorney would "try to pursue the 'serious offense' that [he] intimated he would do."

After the execution of the promissory note, plaintiff received two payments from defendants in the amount of $750. On July 23, 1997, plaintiff notified defendants that they were in default under the promissory note. The present suit followed.

## Case No. A98A2216

1. In three enumerations, defendants contend that the trial court erred in granting summary judgment to plaintiff on the promissory note because there are material facts in dispute regarding their affirmative defenses of duress, failure of consideration, and setoff. "[Plaintiff] established a prima facie right to judgment as a matter of law by producing the note and showing it was executed. The burden then shifted to [defendants] to establish an affirmative defense to [plaintiff's] claim. Once [defendants] raised [affirmative defenses], the burden shifted again to [plaintiff] to establish the non-existence of [those] defense[s]." (Citations omitted.) *Keene v. Herstam*, 225 Ga. App. 115, 116 (1) (483 SE2d 335) (1997). We address each asserted defense in turn.

(a) *Duress.* Defendants contend that the promissory note did not constitute a valid contract because it was executed under duress. OCGA § 13-5-6 provides that "[s]ince the free assent of the parties is essential to a valid contract, duress, either by imprisonment, threats,

or other acts, by which the free will of the party is restrained and his consent induced, renders the contract voidable at the election of the injured party." Defendants argue that plaintiff procured the promissory note under duress because plaintiff's attorney threatened Gouldstone with criminal prosecution for writing bad checks.

As an initial matter, although Gouldstone testified that she was "worried about someone accusing me of a criminal offense" and was "afraid that the attorney would try to pursue the 'serious offense' that [he] intimated he would do," she never testified that her free will was restrained or that she did not sign the promissory note of her own free will. Indeed, she never testified that, absent the attorney's intimation of criminal liability, she would have refused to sign the note. However, it is not necessary to rely on this fact, since the alleged statements by plaintiff's attorney were not sufficient to support a defense of duress.

"It has been frequently held that mere threats of criminal prosecution, when neither warrant has been issued nor proceedings commenced, do not constitute duress. The threatened prosecution must be for an act either criminal or which the party threatened thought was criminal. A mere empty threat does not amount to duress." (Punctuation omitted.) *Yearwood v. Nat. Bank of Athens*, 222 Ga. 709, 712 (2) (152 SE2d 360) (1966). Moreover, "[i]t is not sufficient to allege that the [contract] was executed because of an empty threat made by another. It is necessary to show that at the time there was an apparent intention and ability to execute the threat." *Hoover v. Mobley*, 198 Ga. 68, 71 (31 SE2d 9) (1944). Gouldstone did not testify that the attorney threatened to prosecute her if she did not sign the promissory note. Rather, she stated that he "*intimated* that I *could* have criminal responsibility" for writing the checks. Defendants, in their brief, admit that plaintiff's attorney only "*suggested* that Gouldstone could have criminal responsibility for writing the checks that did not clear." (Emphasis supplied.) The alleged statement of plaintiff's attorney falls far short of the threat of criminal prosecution that might support a duress defense. See *Hoover*, supra; *Yearwood*, supra.

Defendants assert that the fact that Gouldstone signed the note a mere three days after the attorney's threat of criminal prosecution reveals that the note was signed under duress. However, the record clearly shows that plaintiff's attorney gave Gouldstone more than a week to decide whether she wanted to execute the promissory note and that the note was sent by mail, thus giving Gouldstone time to seek an attorney or to otherwise determine if the "threat" was genuine. Compare *Williams v. Rentz Banking Co.*, 112 Ga. App. 384 (145 SE2d 256) (1965) (plaintiffs alleged they were physically detained by the defendant bank until they signed a promissory note).

Although defendants claim that plaintiff's alleged breach of the

lease caused their financial problems, thus forcing them to sign the note, "the [defendants] could have pursued other legal remedies, even though they may have seemed unattractive, rather than going forward with the [promissory note]." *Anziano v. Appalachee Enterprises*, 208 Ga. App. 760, 762 (432 SE2d 117) (1993). "Even assuming for the sake of argument that [defendants were] experiencing economic distress, such financial difficulties do not constitute legal distress." *Miller v. Calhoun/Johnson Co.*, 230 Ga. App. 648, 650 (4) (497 SE2d 397) (1998).

"One may not void a contract on grounds of duress merely because he entered into it with reluctance, the contract is very disadvantageous to him, the bargaining power of the parties was unequal or there was some unfairness in the negotiations preceding the agreement." (Punctuation omitted.) *Tidwell v. Critz*, 248 Ga. 201, 204 (1) (282 SE2d 104) (1981). We conclude that there is no genuine issue as to any material fact regarding defendants' asserted defense; thus, plaintiff is entitled to judgment, as a matter of law, on the issue of duress. Id.

(b) *Failure of consideration.* Defendants' failure of consideration argument also lacks merit. "[N]o consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind." (Punctuation omitted.) *Berry v. Atlas Metals*, 152 Ga. App. 437, 439 (2) (263 SE2d 179) (1979); see also *Miller*, supra at 650 (3). The promissory note in this case was given in payment of an antecedent obligation, namely, DeCraig's liability under the original lease agreement. Although Gouldstone notes that she was not a party to the lease agreement in her individual capacity, "[s]ufficient consideration is evident when one who is an officer or shareholder of a corporation cosigns a note of the corporation since the benefits of the note will be conferred at least indirectly upon the individual." *Marchman Oil &c. Co. v. Southern Petroleum Trading Co.*, 167 Ga. App. 691, 692 (2) (307 SE2d 509) (1983). Because Gouldstone was an officer of DeCraig, there was sufficient consideration for her execution of the note in her individual capacity.

(c) *Setoff.* In their answers, defendants raised the affirmative defense of setoff. In their brief on appeal, defendants make it clear that their claim of setoff is not related to the promissory note, which is the basis of plaintiff's cause of action, but is based on defendants' claim that plaintiff breached the lease by disrupting their business during reconstruction after the fire. This assertion is also the basis for defendants' counterclaim against plaintiff. It is true that "parties to a suit are entitled to setoff 'mutual demands existing at the time of the commencement of the suit.' OCGA § 13-7-5. However, this type of setoff 'does not operate as a denial of the plaintiff's claim; rather it

allows the defendant to set off a debt owed him by the plaintiff against the claim of the plaintiff.' OCGA § 13-7-1. As such, it must be asserted as a counterclaim rather than a defense." (Punctuation omitted.) *Nat. City Bank of Rome v. Busbin*, 175 Ga. App. 103, 105-106 (3) (332 SE2d 678) (1985). "Under the facts before us, the type of setoff asserted by [defendants] does not operate as a denial of [plaintiff's] claim on the note. Rather, such a setoff merely allows [defendants] to setoff a debt owed [them] by [plaintiff], if any is proven at trial, against the claim of [plaintiff] on the note." *Gynecologic Oncology v. Weiser*, 212 Ga. App. 858, 860 (5) (443 SE2d 526) (1994) (affirming grant of partial summary judgment on promissory note). Accordingly, the trial court did not err in rejecting defendants' claim of setoff as a defense to plaintiff's claim under the promissory note.

### Case No. A98A2217

2. In its cross-appeal, plaintiff asserts that the trial court erred in denying its motion for summary judgment as to defendants' counterclaim. However, plaintiff presented no argument below in support of its motion for summary judgment on the counterclaim. Indeed, the only reference to the counterclaim in plaintiff's summary judgment brief below, apart from the request for relief, was plaintiff's factual representation that, "[i]n their answers the Defendants seek to go behind the accord and satisfaction of such promissory note and seek to counterclaim for damages alleged arising from the Plaintiff's failure to make repairs to certain shopping center space in which the Defendant, DeCraig Corporation, was a tenant." To the extent that this sentence raised the issue of whether the promissory note constituted an accord and satisfaction of all issues arising out of the lease agreement, we will address it on appeal. However, we will not consider any other possible grounds for summary judgment, as they were not raised below. See *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995) ("issues that must be rebutted on motion for summary judgment are those raised by the motion").

"An accord and satisfaction exists where (1) there is a *bona fide* dispute as to the amount due under the agreement; (2) the dispute is between the parties and *not* limited to the mind of the debtor; and (3) the dispute existed *prior* to the debtor's tender of any amount less than that due under the agreement. OCGA § 13-4-103 (b) (1). The court may also find an accord and satisfaction where there is an 'independent agreement' between the parties stipulating that the acceptance of a lesser amount satisfies the entire debt. OCGA § 13-4-103 (b) (2)." (Citation omitted.) *Quintanilla v. Rathur*, 227 Ga. App. 788, 793 (3) (490 SE2d 471) (1997).

Although the parties agreed that the promissory note would sat-

isfy defendants' obligation to pay past due rent under the lease agreement, nothing in the record shows that by executing the promissory note, defendants agreed to settle *any* claims they might have had for the *plaintiff's* alleged breach of the lease agreement. In fact, there is no evidence whatsoever that a dispute existed regarding plaintiff's alleged breach prior to the filing of defendants' counterclaim. To the extent that Gouldstone's affidavit reveals that she was aware of possible claims against plaintiff under the lease agreement, this "dispute" was clearly "limited to the mind of the debtor," *Quintanilla*, supra; thus, the promissory note did not operate as an accord and satisfaction of any and all claims defendants may have had under the lease.

Since accord and satisfaction was the only ground even arguably asserted by plaintiff in its motion for summary judgment on defendants' counterclaim, the trial court did not err in denying that motion, even if summary judgment may have been appropriate for other reasons. See *Hodge*, supra.

Accordingly, we conclude that the trial court properly granted summary judgment to plaintiff on its main claim and denied summary judgment with regard to the defendants' counterclaims.

*Judgment affirmed. Pope, P. J., and Beasley, P. J., concur.*

DECIDED MARCH 8, 1999.

*Walter H. Hotz*, for appellants.
*Harris, Phillips & Harris, Steven D. Harris*, for appellee.