71455. GREEN PROPERTY CORPORATION v. O'CALLAGHAN,
SAUNDERS & STUMM, P. C. et al.
(340 SE2d 652)

POPE, Judge.

On October 29, 1982 appellant Green Property Corporation, a Georgia corporation, closed the sale of certain real estate at the offices of appellee O'Callaghan, Saunders & Stumm, P. C. (O'Callaghan), the law firm representing the purchaser in the transaction. O'Callaghan acted as closing attorney. In connection with the closing, as payment of a portion of the purchase price, O'Callaghan issued a check to appellant in the amount of $245,637.99 drawn on O'Callaghan's escrow checking account which was maintained with appellee National Bank of Georgia (NBG). The president of appellant, Dangho Song, a citizen of Japan, took the check and returned to Japan where he deposited it in a Japanese bank. Song testified that although Green Property Corporation had a local bank, he did not deposit it there because it was too late in the day and because he anticipated the winding down of the Georgia corporation. The check was sent through channels and presented for payment to NBG. Through a mistake, and although there were sufficient funds in O'Callaghan's account to cover the check, NBG dishonored it and returned the check to the Japanese bank. Upon learning of the dishonor, O'Callaghan contacted NBG, which admitted the mistake. O'Callaghan then instructed the attorney for appellant to have his client re-submit the check. This was done and the check was accepted by NBG and paid.

Appellant brought suit against appellees for wrongful dishonor of the check, alleging as damages loss of interest for the use of the funds and in addition $39,384.99, which was alleged to be the difference in the conversion rate of dollars to Japanese yen at the time the check was submitted and dishonored and the time when the check was actually paid. Appellees moved for summary judgment, and the motion was granted by the trial court. *Held:*

1. It is clear that the trial court properly granted the motion in regard to NBG. Our decision is controlled by *Stewart v. C & S Nat. Bank,* 138 Ga. App. 209 (225 SE2d 761) (1976), in which this court held that a holder of a check which a bank refused to honor has no cause of action against the bank, but only against the drawer. The

decision in *Stewart* is based upon a provision of the Uniform Commercial Code (UCC), OCGA § 11-3-409 (1) which reads in pertinent part: "A check . . . does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it."

Appellant argues that apart from the UCC, NBG is liable because appellant sued to recover not the face amount of the check, but rather for losses allegedly sustained as a result of NBG's negligence. Yet it is hornbook law that an action in tort requires one to allege a duty, a breach of that duty, and damages proximately flowing from that breach. As set out in OCGA § 11-3-409 (1) and recognized by this court in *Stewart*, NBG had no duty to appellant to do anything with the check until NBG accepted it.

2. Appellant asserts that O'Callaghan is liable for the negligence of NBG in wrongfully dishonoring the check. This argument necessarily fails as a result of our holding in Division 1. In addition, appellant is incorrect in asserting that NBG was O'Callaghan's agent. "A deposit of money in a bank on general deposit creates the relation of debtor and creditor between the bank and the depositor. . . ." *White v. Ga. R. Bank &c. Co.*, 71 Ga. App. 78, 81 (30 SE2d 118) (1944). The evidence of record shows that O'Callaghan merely maintained a checking account with the bank. Thus, no agency relationship existed between the appellees.

Appellant further argues that O'Callaghan is liable for the wrongful dishonor under both the UCC and general contract law. Appellant points to OCGA § 11-3-413 (2) which provides in pertinent part: "The drawer engages that upon dishonor of the draft . . . he will pay the amount of the draft to the holder. . . ." It is appellant's contention that O'Callaghan breached this contract with it when NBG dishonored the check. However, it is clear that the provisions of § 11-3-413 (2) could not become operational until after NBG dishonored the check. At that point, O'Callaghan asked that appellant try again with the bank, and at that time the check was paid. The check is the only contract alleged between the parties. By the terms of the contract as set out in § 11-3-413 (2) no breach occurred. The record shows that appellant's president was aware there was some risk to the company in accepting O'Callaghan's check. He was reluctant to accept other than a cashier's or certified check, but was persuaded by his California counsel to take the check offered. Of course, no one anticipated the unfortunate error. Nonetheless, there is no evidence of record that O'Callaghan breached any duty owed to appellant as set out in the UCC. As the only contract alleged is governed by the UCC, general contract principles are not applicable. Therefore, the trial court did not err in its judgment.

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 6, 1986.

*Ernest H. Woods III,* for appellant.
*Patricia B. Cunningham, John A. Chandler,* for appellees.