### A11A0574. WHOOPING CREEK CONSTRUCTION, LLC v. BARTOW COUNTY BANK.
(713 SE2d 871)

ADAMS, Judge.

Appellant Whooping Creek Construction, LLC ("WCC") brought suit against appellee Bartow County Bank (the "Bank") and others after a check it received for payment of grading services was dishonored. The trial court granted summary judgment to the Bank, and WCC filed the present appeal. As more fully set forth below, we agree with WCC that the trial court erred by granting summary judgment to the Bank, and reverse.

---

WCC, a grading subcontractor, was hired by DDH Construction, Inc. to perform grading work for the construction of a daycare facility in Acworth, Georgia. DDH had been hired by Gavin Garrett, LLC, who had been hired by the general contractor on the project. Gavin Garrett and DDH both held checking accounts at the Bank. David Geros, Jr., a managing member of Gavin Garrett, was also the principal in another company named Missions Estate, LLC, and was a guarantor on a loan that Missions Estate had obtained from the Bank. On June 17, 2009 the guarantors of that loan notified the Bank they could not pay the approximately $199,363 in interest that had accrued on the debt.

Also in June 2009, WCC requested payment for grading work done at the construction site, submitting that request in the usual manner on the form required by the general contractor and including a waiver of liens. In turn, the general contractor issued a payment to Gavin Garrett which included the money owed to WCC, and Gavin Garrett transferred the money to DDH; WCC received a check for $60,452 (the "Check") drawn on DDH's account at the Bank on June 17, 2009.

WCC deposited the Check into its account at McIntosh Bank in Carrollton that same day, and on June 18 the Check was received by the Bank for payment, downloaded from the Federal Reserve Bank and posted as a payment on the DDH account. The next day, Friday, June 19, WCC's McIntosh Bank account was credited for the amount of the Check, and WCC withdrew funds from that account. However, on that same day, an officer from the Bank instructed one of the Bank's check processors to return the Check and place a hold on DDH's account for the specific amount of the Check to prevent it from being paid. A bank employee then returned the item to the Federal Reserve Bank by keying it into a software program that the Bank used for that purpose, which included sending an electronic file to the Federal Reserve with an image of the Check showing that it had been stamped "return reason B uncollected funds hold." The Check, however, was not marked received by the Federal Reserve until Monday June 22. WCC's account was debited for the amount of the check, the Bank lifted the hold on DDH's account, and transferred the funds back to Gavin Garrett's account so that it could exercise its right of set-off against the funds, based on the amounts owed to the Bank by Gavin Garrett pursuant to the terms of the Mission Estates loan.

The Bank then filed a separate action against Geros, Gavin Garrett and DDH, seeking a declaration that the transfer from Gavin Garrett to DDH was fraudulent, and thus the Bank properly exercised its right of set-off to those funds; a default judgment was entered for the Bank on this suit. WCC then filed the present action

against the Bank for wrongful conversion, seeking the $60,452 it was owed for grading services, as well as punitive damages and attorney fees.

1. WCC first contends that the trial court erred by finding that the Bank returned the Check to the Federal Reserve prior to midnight on Friday, June 19, and thus its dishonor of the Check was timely.

Pursuant to OCGA §§ 11-4-104 (a) (10), 11-4-301 and 11-4-302, the Bank had until midnight of June 19 to return the item to the Federal Reserve Bank. WCC argues that an issue of fact exists as to whether the Check was returned by the midnight deadline because an entry on the Check shows it was not received by the Federal Reserve until June 22.

OCGA § 11-4-301 (d) (1) provides that "An item is returned . . . when it is delivered to the presenting or last collecting bank or to the clearing-house or is sent or delivered in accordance with clearing-house rules . . . ."

As to this issue, the Bank presented the affidavit and deposition testimony of Wanda Satterfield, who had been an employee of the Bank for twenty-four years and had been a Deposit Operations Officer for three years. Satterfield testified that pursuant to the instructions of a loan officer at the Bank, a hold was placed on the Check on June 19, and that the check was returned to the Federal Reserve that day at approximately 2:10 p.m. Satterfield further testified that the Bank uses a computer software program to return items to the Federal Reserve, and that the items are keyed in and sent by electronic file back to the Federal Reserve with the images of the returned checks. Further, an exhibit was introduced which showed the items that were returned that day, including the Check issued to WCC.

WCC argues, however, that because the evidence shows that the Check was not marked received by the Federal Reserve until Monday, June 22, the trial court erred in concluding that the check was returned in a timely manner. However, we agree with the trial court that the evidence, as recited above, shows that the Check was returned by the Bank on Friday, June 19. The Bank presented uncontradicted evidence that the Check was returned to the Federal Reserve using established procedures that the Bank used every day to return dishonored checks, and that the Check was returned to the Federal Reserve approximately ten hours prior to its midnight deadline. Moreover, there is nothing in the record to suggest that these procedures somehow failed in this case; rather, the uncontradicted evidence shows the Check, as well as the other items returned by the Bank at the same time as the Check were in fact received by the Federal Reserve Bank. The Bank has no control over when the

Federal Reserve, or any other receiving institution, marks an item received, and the fact that the Check was not marked received by the Federal Reserve until the following Monday does not, under the circumstances of this case, create an issue of fact concerning when the Bank returned the Check. Thus, the trial court did not err by granting summary judgment on this issue.

2. WCC next argues that the trial court's reliance on the case of *Green Property Corp. v. O'Callaghan, &c., P.C.*, 177 Ga. App. 686 (340 SE2d 652) (1986) is misplaced because that case is "limited" to cases involving claims based on a bank's alleged negligence in dishonoring a check based on a mistake, whereas the case at bar involves an intentional act of conversion. However, our holding in *Green* was controlled by *Stewart v. C & S Nat. Bank*, 138 Ga. App. 209 (225 SE2d 761) (1976), in which we held that a holder of a check which a bank refused to honor has no cause of action against the bank, but only against the drawer. As we stated in *Green*, "[t]he decision in *Stewart* is based upon a provision of the Uniform Commercial Code (UCC), OCGA § 11-3-409 (1) [now OCGA § 11-3-408] which reads in pertinent part: 'A check . . . does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.'" *Green*, 177 Ga. App. at 686-687 (1). Notably, *Stewart* involved a claim for unlawful refusal to cash a check drawn against a solvent account, and does not appear to involve a claim for negligent dishonor. *Stewart*, 138 Ga. App. at 210. Thus, we do not agree that the holding in *Green* is limited to those situations involving negligent dishonor of a check.

WCC also argues that in this case, unlike in *Green,* the Bank had in fact accepted the Check, pointing to the fact that the Check was posted to the DDH account as payable on June 18, and "the money cleared to WCC's account, and WCC withdrew the funds on June 19." The Bank argues, however, that the Check was timely returned and it never accepted the Check. We agree. As we held in Division 1, the Bank timely returned the Check in accordance with OCGA §§ 11-4-301 and 11-4-302, and thus preserved its right to dishonor the Check. See also OCGA §§ 11-4-215 (allowing for provisional settlement of an item, which can, among other ways, be revoked by following the procedures set forth in OCGA § 11-4-301) and 11-3-409 (a) (defining "acceptance").

3. Although that would seem to end our analysis here, and compel the affirmance of the trial court's order granting summary judgment in favor of the Bank, WCC also makes an additional argument, relying on *Barnett Bank of Atlanta v. Thurman*, 213 Ga. App. 820 (446 SE2d 529) (1994), that the trial court erred by granting summary judgment on its conversion claim because the

Bank had actual knowledge that the funds that passed through the accounts of Gavin Garrett and DDH were intended to discharge a debt owed to WCC.

In *Thurman*, the plaintiff/account holder had received one check from the sale of four tractors at an auction. Of the four tractors sold, only one tractor belonged to plaintiff and the other three tractors were owned by Edward Thurman. The plaintiff testified that he took the check to deposit it at his bank, and at the time he deposited the check, he informed the bank officer that the funds he was depositing included the amounts received in the sale for Thurman's three tractors, and that he asked the bank officer when Thurman could get his money from the bank. Subsequently, the bank set-off funds from the plaintiff's account, including those belonging to Thurman for the sale of his tractors, and Thurman sued the account holder, who in turn brought a third-party action against the bank for conversion. In upholding the jury's verdict in favor of Thurman, this Court, quoting *Cotton States Mut. Ins. Co. v. C & S Nat. Bank*, 168 Ga. App. 83, 87 (2) (308 SE2d 199) (1983) stated:

> [U]nless funds deposited with a lending bank are in an account governed by an agreement which designates the funds as trust funds, *or unless the lending bank by other means has actual knowledge that the funds deposited in a general account are intended to discharge a specfic obligation* or otherwise partake of the character of trust funds, then the funds are treated as any other general deposit funds . . . and are subject to set-off. . . .

(Emphasis supplied.) *Thurman*, 213 Ga. App. at 821 (1).

Thus, stated slightly differently, even where the right of set-off against a depositor exists, that

> right has application only to general deposit funds, which are commingled with other funds on deposit with the bank, and not to receipts which are designated as trust funds *or are received by the bank with knowledge that they are intended to discharge a particular obligation, such that they partake of the character of trust funds.*

(Emphasis supplied.) *National City Bank of Rome v. Busbin*, 175 Ga. App. 103, 105 (3) (332 SE2d 678) (1985).

In this case, WCC introduced an affidavit from one of its members who averred that he had spoken with the president of the Bank about the returned Check, and that the president acknowledged that he knew that the Check was paid to WCC for work WCC

performed as a subcontractor under DDH and that he knew where the funds came from. Thus it appears to us that a material question of fact exists concerning whether the Bank had actual knowledge that the funds which first were deposited in the Gavin Garrett account and then the DDH account were being held for the purpose of discharging a debt owed to WCC, and WCC was therefore entitled to a jury trial on whether the Bank's appropriation of those funds constituted a wrongful conversion. Compare *Smeltzer v. Bank of Fitzgerald*, 192 Ga. App. 747 (386 SE2d 406) (1989) (bank had no knowledge that funds were intended to go into a different account).

*Judgment reversed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED JULY 8, 2011.

*Price, Pyles, Dangle, Parmer & Rooks, Thomas E. Parmer*, for appellant.

*Akin & Tate, William M. Akin*, for appellee.