S11A0273. TURNER et al. v. CITY OF TALLAPOOSA et al.

(709 SE2d 211)

MELTON, Justice.

In this quiet title action, Charles Stanley Turner and Tim W. Turner brought suit against the City of Tallapoosa, Philip Eidson, the City Manager, Donald Ridley, and Ronald Ridley, contending that they owned certain unused roadbeds running through the Ridleys' property. The trial court determined that the Turners did not own the property in question, and this appeal ensued. For the reasons set forth below, we affirm the findings of the trial court.

The record shows that, prior to 2001, the City owned two undeveloped public streets, Grant Street and Mays Street, traversing two separate tracts of land, the "Hicks Estate" and the "Owensby Estate." By May of 2001, it became apparent that the City was not going to develop the roads, and the owners of the Hicks Estate at that time filed a petition with the City asking that the streets be closed. In this petition for closure, the legal description of the streets is set forth as follows:

> That portion of Mays Street as it runs from the south line of Land Lot 130 to the southwesterly right of way of Georgia Highway 100; that portion of Grant Street as it runs from the south line of Land Lot 130 to the southwesterly right of way of Georgia Highway 100 . . . , all as more fully shown on a plat attached hereto and incorporated by reference, are open streets in the City of Tallapoosa, Georgia, which run through or touches petitioner's property.

This legal description appears to refer to the entire length of Mays Street and Grant Street as they run through both the Hicks Estate and the Owensby Estate. The petition goes on to state, however, that

> [s]aid portions of Mays Street [and] Grant Street are of no use or benefit to the City of Tallapoosa *as same is platted to run through Petitioner's property* [Hicks Estate], and it would be of benefit to the City and Citizens thereof if said streets were closed *as it runs through or touches Petitioner's property*, as it could thereafter develop the same.

(Emphasis supplied.) Based on the emphasized language, it becomes clear that the petitioners were requesting closure and transfer of only the roadbed property contained within the Hicks Estate.

On May 14, 2001, the City granted the closure petition by resolution. In this resolution, the City states that Mays Street and Grant Street "may extend onto or touch portions of the property of

Petitioner[, the Hicks Estate]." The City then determined that there was "no need for those portions" of the streets and that these "same" portions should be closed. The resolution then closes the roads with the following language:

> That portion of Mays Street as it runs from the south line of Land Lot 130 to the southwesterly right of way of Georgia Highway 100; that portion of Grant Street as it runs from the south line of Land Lot 130 to the southwesterly right of way of Georgia Highway 100 . . . , all as more fully shown on a plat attached hereto and incorporated by reference *and as touches the property of Petitioner* are hereby closed, and hereafter shall not and do not constitute a public street in said City.

(Emphasis supplied.) The resolution then states that the closed portions of the streets could be conveyed to the owners of the Hicks Estate at the time. Therefore, it is evident that the City closed only those portions of the streets touching the Hicks property, not the portions running through the Owensby Estate. Likewise, the City only authorized transfer of the roads within the Hicks Estate to the owners thereof.

On the same day that the resolution was passed, the City issued a quitclaim deed to the owners of the Hicks Estate. The property description accompanying this deed, however, appears to have been merely copied over from the legal description contained in the closure petition, rather than from the resolution closing a portion of the roads. As a result, the quitclaim deed erroneously refers to the entire length of the roads in question, incorrectly stating that Mays Street and Grant Street are "*open* streets in the City of Tallapoosa, Georgia, which run through or touch[ ] *petitioner's* property." (Emphasis supplied.) Therefore, on its face, this deed becomes, at best, ambiguous because the City could not merely convey open streets to private individuals, and the deed refers to an unnamed and unidentified petitioner.

In May 2003, the prior owners who petitioned the City to close portions of Mays Street and Grant Street conveyed the Hicks Estate to the Turners, the current appellants. The deed conveying the property to the Turners apparently was accompanied by a February 2000 survey that was incorporated as the legal description of the property. Because it preceded the 2001 resolution, this 2000 survey still indicated that the City owned the roadbeds in their entirety.[1] In

---

[1] Corrective deeds were later executed to attempt to correct this error.

October 2003, the adjoining Owensby Estate was conveyed to the Ridleys. In late 2007, the Ridleys, pursuant to a building permit issued by the City, began constructing a commercial building on their property for their propane business, and part of the construction was over an area that would have been the roadbeds for Grant Street and Mays Street. This construction work, in part, was contiguous to a lake located on the Hicks Estate, and the Turners contend that the work caused the lake to become polluted with sediment and silt. As a result, the Turners went to the City and complained, contending that the City had previously deeded to their predecessors the entirety of the land related to Mays Street and Grant Street, including the two strips of land running through the Owensby Estate that was now owned by the Ridleys. The Turners further contended that the City improperly issued a building permit to the Ridleys and failed to prevent pollution of the lake. The City Attorney looked into the matter and determined that the Turners owned only those portions of the roadbeds contained within the Hicks Estate. This dispute led to the present quiet title action filed by the Turners. In addition to complaints regarding title, the Turners raised claims regarding trespass to realty, nuisance, water quality and erosion control violations,[2] mesne profits, prescription, and mandamus.

In response to the Turners' complaint, the City filed motions to dismiss and for summary judgment. Rather than filing a separate motion, the Ridleys simply joined the motion filed by the City. After considering the Turners' claims, the trial court found that the City transferred only the roadbed property wholly within the Hicks Estate to the Turners' predecessors and that, in any event, the Turners had failed to give the City appropriate ante litem notice. As a result, the trial court dismissed the claims against the City which were not accompanied by proper notice and granted summary judgment to all of the defendants on all of the Turners' claims with the sole exception of the Turners' nuisance claim brought against the Ridleys based on pollution of their lake by the Ridleys' construction.

1. The trial court properly granted summary judgment against the Turners regarding their quiet title claim to the roadbed property in question. As set forth above, the legal description contained in the quitclaim deed appears, at best, vague and ambiguous on its face because it refers to Mays Street and Grant Street as open roads, which the City would obviously not be authorized to convey to a

---

[2] The Turners appear to have abandoned this contention on appeal. As such, it will not be addressed herein.

private individual.[3] See OCGA § 32-7-4. This ambiguity, however, would not necessarily defeat the deed under the facts of this case. "If the description [in a deed] is ambiguous but sufficient to furnish a key to the boundary, extrinsic evidence may be used to correctly apply the description to the true boundary intended by the parties." (Citations and punctuation omitted.) *Ketchum v. Whitfield County*, 270 Ga. 180, 181 (508 SE2d 639) (1998). In this case, extrinsic evidence of the intent of the parties to the quitclaim deed is plentiful. Both the original petition to close portions of the streets and the resulting City resolution make it clear that the parties intended the closure and conveyance of only the portions of the roadbeds contained within the Hicks Estate. There was no intent to convey the roadbed property which extended into the Owensby Estate that had not been closed.[4] Accordingly, the trial court properly determined that the Turners' quiet title action had no merit, as their predecessors in interest, and therefore the Turners, did not and could not have acquired the public roadbeds running through the Owensby Estate.

2. Because the Turners could not prove a viable property interest in the roadbeds of Mays Street and Grant Street running through the Owensby Estate, all of their claims based on such an interest concomitantly fail.

3. The Turners contend that the trial court erred by granting summary judgment to the Ridleys regarding damages for depositing sediment into the lake. The record reveals, however, that the Turners' claims for damages remain viable. The trial court did not grant summary judgment regarding the nuisance claim brought against the Ridleys, and the Ridleys concede that the Turners' claims for damages relating to the creation of a nuisance by the transfer of sediment remain. Concomitantly, as the Ridleys also concede, the Turners' trespass claims which are premised on the same alleged

---

[3] Because of these ambiguities on the face of the deed, the Turners were on inquiry notice, at the very least, that there were problems with the property description. As a result, they cannot claim ownership of the entirety of the Mays Street and Grant Street property as bona fide purchasers. See, e.g., *Deljoo v. SunTrust Mortgage, Inc.*, 284 Ga. 438 (668 SE2d 245) (2008).

[4] At some point in 2004, the City became concerned that the description in the 2001 deed to the Hicks Estate was problematic, and, as a precautionary measure, the Turners' predecessors in interest executed a corrective deed with the City conveying to the City those portions of Grant Street and Mays Street running through the Owensby Estate. This deed states that its purpose is "to correct a portion of the description in a Quitclaim Deed dated May 14, 2001 . . . which incorrectly conveyed portions of Mays Street and Grant Street which did not run through property owned by the Estate of Eugene Hicks." While this characterization of the effect of the 2001 quitclaim deed is incorrect, the corrective deed nonetheless provides further evidence of the original intent of the parties to transfer only those portions of Mays Street and Grant Street contained within the Hicks Estate.

damages arising from the transfer of sediment remain viable as well and must be considered by the trial court.

4. The trial court correctly dismissed the Turners' nuisance claim against the City, however, due to insufficient ante litem notice. Based on our review of the record, the trial court properly dismissed the Turners' claim for nuisance and resulting damages against the City for failure to include any such claim in its ante litem notice. *City of Walnut Grove v. Questco, Ltd.*, 275 Ga. 266 (2) (564 SE2d 445) (2002). As the trial court properly granted summary judgment to the City on the Turners' remaining claims, we need not consider the propriety of ante litem notice with regard to them.

5. Finally, the Turners contend that the trial court erred by dismissing their claim for a prescriptive easement against the Ridleys. Specifically, the Turners contend that, for the past 20 years, they have used a road circling their lake and that part of this road extends onto the Owensby Estate. Based on the absence of any transcript and the state of the record, which contains almost no information or evidence regarding the easement, we must assume the regularity of the proceedings below, and, as such, we cannot say that the trial court erred in this matter. See, e.g., *Vaughan v. Buice*, 253 Ga. 540 (322 SE2d 282) (1984).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 7, 2011 —
RECONSIDERATION DENIED APRIL 26, 2011.

*Jeffrey W. Duncan*, for appellants.
*Henderson & Hundley, Kelly M. Hundley, Jack F. Witcher, Daniel B. Greenfield*, for appellees.