**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 28, 2013**

# In the Court of Appeals of Georgia

A13A0969. STATE OF GEORGIA DEPARTMENT OF CORRECTIONS v. DEVELOPERS SURETY AND INDEMNITY COMPANY.

RAY, Judge.

This case stems from a construction contract entered between the Georgia Department of Corrections ("GDOC") and Lewis Walker Roofing ("Walker Roofing") for the purpose of re-roofing certain buildings at the Valdosta State Prison. After a nearly two-year long delay in completing the project, GDOC declared the contract in default, and the payment and performance bonds issued by Developers Surety and Indemnity Company ("Developers Surety") for the benefit of GDOC as obligee were invoked. Developers Surety then filed the present suit against GDOC, alleging that GDOC breached the construction contract it entered into with Walker Roofing. Developers Surety also sought a declaratory judgment that, as a result of

GDOC's breach of the construction contract, it had no obligation to perform its obligations under the payment and performance bond it issued to Walker Roofing on behalf of GDOC. GDOC filed a counterclaim for breach of contract. Both parties filed cross-motions for summary judgment. In its motion for summary judgment, GDOC argued that the doctrine of sovereign immunity barred Developers Surety's claims against it. GDOC appeals from the trial court's order granting Developers Surety's summary judgment motion and denying GDOC's summary judgment motion. Finding no error, we affirm.

On appeal from the grant or denial of a motion for summary judgment, "this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation omitted.) *Shekhawat v. Jones*, __ Ga. __ (746 SE2d 89) (2013).

So viewed, the relevant evidence shows as follows. On April 25, 2008, GDOC posted an "Invitation to Bid" for a construction project that involved replacing the roofs on several buildings located at the Valdosta State Prison. On June 12, 2008, GDOC awarded the project to Walker Roofing. The construction contract between GDOC and Walker Roofing included two "no assignment" clauses prohibiting

2

Walker Roofing from assigning its performance or right to payment under the contract.

As a prerequisite to contracting with GDOC, Walker Roofing was required to obtain payment and performance bonds that would assure its performance under the contract. Developers Surety issued payment and performance bonds to Walker Roofing. Walker Roofing and Developers Surety had previously signed a general agreement of indemnity in favor of Developers Surety that included a provision in which Walker Roofing assigned to Developers Surety the company's right to payment under bonded contracts as security against any losses that Developers Surety might suffer under a bond. GDOC is not a party to the indemnity agreement. The bonds required Developers Surety, upon default of Walker Roofing, to "promptly remedy the default or defaults or to promptly perform the [c]ontract in accordance with its terms and conditions." It also required Developers Surety to give GDOC notice "within twenty-five (25) days after receipt of a declaration of default of the surety's election either to remedy the default or defaults promptly or to perform the contract promptly."

Walker Roofing began work at the Valdosta State Prison on December 1, 2008. Pursuant to its construction contract, Walker Roofing was required to complete its

work within 150 consecutive calendar days; however, the work was not completed as of September 23, 2010, when GDOC declared Walker Roofing in default. The contract between Walker Roofing and GDOC states that Walker Roofing shall have access to work areas on weekdays between 7:30 a.m. and 5:00 p.m. However, Walker Roofing's daily start time was delayed by at least thirty minutes and up to two-and-a-half hours because the workers experienced difficulties gaining access to the prison grounds. GDOC additionally required Walker Roofing to have their equipment properly secured and the roofers off the project site by 4:30 p.m., not 5:00 p.m. as per the contract. To exit the project site and secure their equipment by 4:30 p.m., however, the roofing crew had to stop work at 3:30 p.m. Work was further delayed because Walker Roofing was prohibited from accessing more than one roof at a time, GDOC assigned only one prison guard to monitor the roofing crew, and work was not permitted when the assigned guard was unavailable due to sickness or vacation time.

On September 23, 2010, GDOC issued a formal notice of default with respect to the performance of Walker Roofing, thus triggering Developers Surety's obligations under the performance bond. Developers Surety did not notify GDOC within 25 days of receipt of GDOC's notice of default regarding whether it would remedy the default or perform the contract. However, on January 12, 2011,

4

approximately three months after the declaration of default, Developers Surety offered to GDOC that it "could enter into a contract with Skyline for the completion of the work on the Project (this process being sometime known as a 'tender of completion contractors')." GDOC then contracted with Skyline to complete the project. Prior to Walker Roofing's default, Developers Surety had provided financial assistance to Walker Roofing under the payment and performance bonds in the amount of $577,118.60, and it additionally incurred $160,161.39 in costs and attorney fees arising from its investigation of its liability, if any, under the default.

On July 12, 2011, Developers Suretys filed the present complaint against GDOC for breach of contract and for a declaratory judgment that it had no obligation under the payment and performance bond it issued to Walker Roofing on behalf of GDOC. The parties filed cross-motions for summary judgment. After a hearing, the trial court found that Developers Surety's claims were not barred by sovereign immunity and that GDOC had breached the construction contract as a matter of law. Thus, it granted Developers Surety's motion for summary judgment and denied GDOC's motion for summary judgment. In the same order, the trial court entered a

judgment in favor of Developers Surety in the amount of $577,118.60.[1] GDOC appeals from that order.

1. GDOC contends that the trial court's denial of its summary judgment motion was in error because Developers Surety was not a party to the construction contract between GDOC and Walker Roofing and, thus, that the State's waiver of sovereign immunity for breach of contract did not apply to Developers Surety. We disagree.

"[S]overeign immunity is a threshold issue that the trial court [is] required to address before reaching the merits of any other argument." (Footnote omitted.) *Albertson v. City of Jesup*, 312 Ga. App. 246, 248 (1) (718 SE2d 4) (2011). It is axiomatic that "[t]he party seeking to benefit from the waiver of sovereign immunity bears the burden of proving such waiver." (Citations omitted.) *Bd. of Regents of the Univ. Sys. of Ga. v. Doe*, 278 Ga. App. 878, 881 (1) (630 SE2d 85) (2006). It is also well settled that "the sovereign cannot be sued in its own courts, or in any other court, without its consent and permission; but it may, if it thinks proper, waive this

---

[1] The trial court based the amount of damages it awarded on an affidavit by Gary Perkins, a representative of Developers Surety. The trial court admitted the affidavit over GDOC's objections and held that the Perkins affidavit was sufficient to establish Developers Surety's damages as a matter of law because GDOC provided no affidavit or other evidence raising a question of material fact as to damages. GDOC does not challenge the amount of damages awarded on appeal.

privilege, and permit itself to be made a defendant in a suit by individuals." (Punctuation and footnotes omitted.) *Dekalb County School District v. Gold*, 318 Ga. App. 633, 636 (1) (734 SE2d 466) (2012). The Georgia Constitution provides that, except as specifically provided therein, "[t]he sovereign immunity of the [S]tate and its departments and agencies can be waived only be an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. Art. I, Sec. II, Para. IX (e). One of the Constitution's exceptions to the defense of sovereign immunity is for "any action ex contractu for the breach of any written contract. . . entered into by the [S]tate or its departments and agencies." Id at (c).

GDOC contends that the waiver of the State's sovereign immunity for contract actions does not apply in the present suit because Developers Surety was not a party to the construction contract between GDOC and Developers Surety.[2] However, Developers Surety argues, and the trial court agreed, that GDOC waived sovereign

---

[2] In making this argument, GDOC cites to case law discussing the elements of a contract and determining whether or not a written contract with a State agency exists. See *Kennedy v. Ga. Dept. of Human Resources Child Support Enforcement*, 286 Ga. App. 222, 224 (1) (648 SE2d 727) (2007); *Bd. of Regents of the Univ. Sys. of Ga. v. Tyson*, 261 Ga. 368, 369-370 (1) (404 SE2d 557) (1991). In the present case, there is no dispute that a written contract between GDOC and Walker Roofing exists.

immunity by entering into a contract with Walker Roofing and that the doctrine of equitable subrogation gave Developers Surety, as the surety, the ability to "step into the shoes" of Walker Roofing and file suit against GDOC once it incurred liability and paid the obligations of its principal under the bond. See *Nova Casualty Co. v. U. S.*, 69 Fed. Cl. 284, 296 (C) (1) (2006).

Under Georgia law, "[a] surety who has paid the debt of his principal shall be subrogated, both at law and in equity, to all rights of the creditor and, in a controversy with other creditors, shall rank in dignity the same as the creditor whose claim he paid." OCGA § 10-7-56. The right of subrogation "is not founded upon contract, express or implied, but upon principles of equity and justice." *Argonaut Ins. Co. v. C&S Bank of Tifton*, 140 Ga. App. 807, 811 (232 SE2d 135) (1976). Subrogation is a substitution of the parties, such that the substituted entity succeeds all rights of another. *Cotton States Mut. Ins. Co. v. Citizens and Southern Nat. Bank*, 168 Ga. App. 83, 86 (1) (308 SE2d 199) (1983).

Georgia courts have not yet addressed waiver of sovereign immunity in the context of equitable subrogation. Accordingly, we must decide whether Developers Surety, as subrogee, may rely on the State's waiver of sovereign immunity for the breach of any contract entered into by a state agency after it steps into the shoes of

8

Walker Roofing. In doing so, we find the reasoning set forth in the United States Court of Appeals for the Federal Circuit's opinion, *Ins. Co. of the West v. U. S.*, 243 F.3d 1367, 1367 (C.A. Fed., 2001), to be persuasive.

In *Ins. Co. of the West*, the surety of a contractor had financed the completion of a government contract after the contractor defaulted, and the surety then sued the government directly to recover the remaining funds. Id. at 1369 (I). In that case, the appellate court held that the federal government's waiver of sovereign immunity under the Tucker Act[3] for "any claim against the United States founded . . . upon any express or implied contract with the United States" was not limited to claims asserted by the original parties to the contract, but that the waiver of sovereign immunity applied to subrogees as well. Id. at 1372-1374 (IV). In doing so, the court reasoned that the language of the Tucker Act was not "limited to claims asserted by the original claimant," but instead that the language of the act "contain[ed] an unequivocal expression waiving sovereign immunity as to *claims*, not particular *claimants*." (Emphasis supplied.) Id. at 1373-1374 (IV). Thus, the *Ins. Co. of the West* court held that "waivers of sovereign immunity applicable to the original claimant are to be construed as extending to those who receive assignments, whether voluntary

[3] 28 U.S.C. § 1491 (a) (1).

9

assignments or assignments by operation of law, where the statutory waiver of sovereign immunity is not expressly limited to waivers for claims asserted by the original claimant." Id. at 1373 (IV).

Similar to the federal government's waiver of sovereign immunity under the Tucker Act, the language of the Constitution of Georgia does not limit the waiver of the State's sovereign immunity for breach of contract actions to particular claimants. Rather, our Constitution provides that "[t]he state's defense of sovereign immunity *is hereby waived as to any action* ex contractu for the breach of any written contract . . . entered into by the state or its departments or agencies." (Emphasis supplied.) Ga. Const. Art. I, Sec. II, Para. IX (c). Accordingly, we find that Developers Surety, a subrogee stepping into the shoes of Walker Roofing, may rely upon the waiver of sovereign immunity that applied to the government contractor.[4] See also, *Nova Cas,* supra at 293-295 (B), 296 (C) (1). Thus, we find no error in the trial court's denial of GDOC's motion for summary judgment on sovereign immunity grounds.

---

[4] If the rule were otherwise, what rational business would agree to issue a payment or performance bond to benefit the State government? Under the rule proposed by the GDOC, if a dispute arose under such a bond, only the government or the government contractor would have a right of action. The business issuing the bond would not.

10

2. GDOC next contends that the anti-assignment clauses contained in the construction contract rendered any assignment by Walker Roofing to Developers Surety ineffectual and, thus, that the trial court's grant of summary judgment to Developers Surety was in error. We disagree.

The construction contract between GDOC and Walker Roofing contained two anti-assignment clauses, which provide that: "[t]his Agreement and the proceeds of this Agreement may not be assigned nor may the performance thereunder be assigned, except with the prior written consent of the [GDOC]," and that "[n]either party to the contract shall assign the contract or sublet it as a whole nor shall the Contractor assign any moneys due or to become due to him hereunder." GDOC argues that these anti-assignment clauses prohibited Walker Roofing from assigning its rights under the construction contract to Developers Surety. However, in its order, the trial court held that the anti-assignment clauses contained in the construction contract were unenforceable because "the Uniform Commercial Code ["UCC"] at OCGA § 11-9-406 . . . nullifies these [a]nti-[a]ssignment provisions."

GDOC argues the that OCGA § 11-9-406 (d), the UCC provision prohibiting no-assignment clauses in contracts, does not apply in the present case because the construction contract between GDOC and Walker Roofing was not a "secured

11

transaction" as defined by OCGA § 11-9-109 (a). Alternatively, GDOC argues that even if the underlying construction contract could be found to be a "secured transaction," OCGA § 11-9-109 (d) (16) states that "[t]his article does not apply to . . . [a] security interest created by or affecting property of this state or any governmental unit of this state in any public finance transaction. . . ." However, these arguments are unavailing.

We agree with Developers Surety's contention that its security interest was not in the construction contract or the personal property or fixtures of the State, as GDOC argues, but rather that, under the indemnity agreement, Developers Surety had a security interest in accounts comprised of the amounts payable to Walker Roofing pursuant to any contract subsequently bonded by Developers Surety. OCGA § 11-9-406 (d) (1) renders any restriction on the assignment of accounts unenforceable. That subsection provides that "a term in an agreement between an account debtor and an assignor . . . shall be ineffective to the extent that it . . . [p]rohibits, restricts, or requires the consent of the account debtor. . . to the assignment or transfer of . . . the account, chattel paper, [or] payment intangible. . ." An "account" is defined as a "right to payment of a monetary obligation, whether or not earned by performance . . . for services rendered or to be rendered." OCGA § 11-9-102 (a) (2). An "account

12

debtor" is "a person obligated on an account." OCGA § 11-9-102 (a) (3). In the present scenario, the "account" is the right to receive payment from GDOC under the construction contract; GDOC, as the entity obligated to pay money due on the account, is the "account debtor." Thus, the security interest in the accounts owed by GDOC to Walker Roofing is covered by the UCC, and to the extent that the anti-assignment clauses of the construction contract could be construed to prohibit Walker Roofing from assigning its right to these accounts to Developers Surety, we find that they are unenforceable as a matter of law under OCGA § 11-9-406 (d) (1).

3. GDOC next contends that the trial court erred by granting Developers Surety's summary judgment motion and finding that GDOC "materially breached the [construction contract] by imposing restrictions on [Walker Roofing's] access to the project site that were contrary to the terms of the [construction contract]." We disagree.

The trial court's finding that GDOC breached the construction contract was based largely upon matters deemed admitted after GDOC failed to submit a timely response to Developers Suretys' request for admissions, and the trial court denied GDOC's motion to withdraw the admissions. See OCGA § 9-11-36 (a) (2) ("Each matter of which an admission is requested . . . is admitted unless, within 30 days after

13

service of the request or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection. . .”). On appeal, GDOC does not argue that the trial court erred in denying its motion to withdraw admissions. Rather, GDOC argues that its actions "were permitted under the terms of the Construction Contract" and, thus, that the trial court's grant of summary judgment was in error. Developers Surety, on the other hand, contends that the facts deemed admitted supports the trial court's grant of summary judgment in its favor.

In order "[t]o affirm a grant of summary judgment, it must affirmatively appear from the record that no question of material fact exists and [that] the moving party is entitled to judgment as a matter of law." (Citation omitted.) *Crown Ford v. Crawford*, 221 Ga. App. 881, 882 (473 SE2d 554) (1996). In the case at bar, the trial court's grant of summary judgment was based on facts deemed admitted as a consequence of GDOC's failure to respond timely to requests for admission. A party's failure to respond timely to requests for admission conclusively establishes as a matter of law each of the matters addressed in the requests. See OCGA § 9-11-36 (b). "This is true even if the requested admissions require opinions or conclusions of law, so long as the legal conclusions relate to the facts of the case." (Citation and punctuation

omitted.) *Robinson v. Global Resources, Inc.*, 300 Ga. App. 139, 140 (684 SE2d 104) (2009). Among the matters deemed admitted by GDOC as a matter of law are the following statements: "[a]t no point during the work period was [Walker Roofing] allowed access to the work as provided in the contract documents" ; "the contract documents do not state that the contractor will be limited to access only one roof at a time" ; "the contract documents do not state that security for the work will be provided by only one guard at a time . . . and [Walker Roofing] was not allowed to work when the assigned guard was unavailable due to sickness or vacation time" ; Walker Roofing "experienced gate interferences and delays that prevented access to prison grounds" ; and that GDOC *"materially breached their contract with [Walker Roofing]."* Because these "admissions covered all the essential claims presented in [Developers Surety's] verified complaint, the trial court did not err in granting summary judgment to [Developers Surety] on the issue[s] of [breach of contract and declaratory judgment]." See *Turner v. Mize*, 280 Ga. App. 256, 259 (2) (633 SE2d 641) (2006).

4. GDOC contends that trial court erred in dismissing GDOC's counterclaim asserting breach of the performance bond by Developers Surety because it did not comply with the terms of the performance bond. We disagree.

15

The performance bond issued by Developers Surety required it to give GDOC notice "within twenty-five (25) days after receipt of a declaration of default of the [s]urety's election to either remedy the default or defaults promptly or to perform the contract promptly." Although the GDOC issued its formal notice of default on September 23, 2010, Developers Surety did not respond until nearly three months later when it offered on January 12, 2011, that "GDOC could enter into a contract with Skyline for completion of work on the [p]roject." GDOC's counterclaim sought damages for breach of this provision of the performance bond claiming that it had "sustained substantial damages, including but not limited to delay damages, the cost of repairing or replacing deficient work, completion and remediation costs, extended personnel costs, and other damages to be demonstrated at trial."

The trial court dismissed GDOC's counterclaim for breach of this provision of the performance bond, holding that the fact that GDOC breached its contract with Walker Roofing "as a matter of law[] preclud[ed] GDOC's counterclaim from going forward." In support of this conclusion, the trial court cited to OCGA § 10-7-2 for the rule that the liability of a surety on a bond is secondary to that of its principal. Thus, the trial court reasoned, "if [Walker Roofing] is not liable to GDOC, then [Developers' Surety] cannot be liable to GDOC."

16

OCGA § 10-7-2 provides that "[t]he obligation of the surety is accessory to that of his principal; and, if the latter from any cause becomes extinct, the former shall cease of course, even though it is in judgment. . . ." Since Developers Surety had no liability to GDOC under the bond, as we have found herein, then any delay of Developers Surety in giving notice to GDOC that it should proceed to hire Skyline to finish the job could not be the basis of any claim by GDOC against it. See *McWhirter Material Handling Co. v. Ga. Paper Stock Co.*, 118 Ga. App. 582, 584 (2) (164 SE2d 852) (1968) (finding that a surety could not be held liable when it's principal was found to be not liable). Accordingly, we find that the trial court's dismissal of the GDOC's counterclaim was in not in error.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*

17