In the Supreme Court of Georgia

Decided:  September 22, 2014

S14G0360. STATE OF GEORGIA DEPARTMENT OF  CORRECTIONS v. DEVELOPERS SURETY AND INDEMNITY COMPANY.

HINES, Presiding Justice.

This Court granted certiorari to the Court of Appeals in *State Dept. of Corrections v. Developers Sur. and Indem. Co.,* 324 Ga. App. 371 (750 SE2d 697) (2013), to consider whether the State's sovereign immunity is waived for a claim asserted by a surety on a contract with the State.  See 1983 Ga. Const. Art. I, Sec. II, Para. IX.[1]  For the reasons which follow, we find that it is, and

[1]1983 Ga. Const. Art. I, Sec. II, Para. IX states:

(a) The General Assembly may waive the state's sovereign immunity from suit by enacting a State Tort Claims Act, in which the General Assembly may provide by law for procedures for the making, handling, and disposition of actions or claims against the state and its departments, agencies, officers, and employees, upon such terms and subject to such conditions and limitations as the General Assembly may provide.

(b) The General Assembly may also provide by law for the processing and disposition of claims against the state which do not exceed such maximum amount as provided therein.

(c) The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies.

(d) Except as specifically provided by the General Assembly in a State Tort Claims Act, all

accordingly, we affirm the judgment of the Court of Appeals.[2]

The facts as found by the Court of Appeals are the following. The Georgia Department of Corrections ("GDOC") entered into a construction contract ("Contract") with Lewis Walker Roofing ("Walker Roofing") to re-roof several buildings at Valdosta State Prison. The Contract contained two "no assignment" clauses,[3] and as a prerequisite to contracting with GDOC, Walker Roofing was

officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

(e) Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

(f) No waiver of sovereign immunity under this Paragraph shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution.

[2]An appeal requiring a first impression construction of the sovereign immunity provision of the Georgia Constitution is within this Court's exclusive appellate jurisdiction. See Ga. Const. of 1983 Art. VI, Sec. VI, Para. II.

[3]The no-assignment clauses stated that "[t]his Agreement and the proceeds of this Agreement may not be assigned nor may the performance thereunder by assigned, except with the prior written consent of the [GDOC]" and "[n]either party to the contract shall assign the contract or sublet it as a whole nor shall the Contractor assign any moneys due or to become due to him hereunder."

2

required to obtain payment and performance bonds. It obtained such payment and performance bonds from Developers Surety and Indemnity Company ("Developers Surety"). Walker Roofing and Developers Surety had previously signed a general agreement of indemnity in favor of Developers Surety that included a provision in which Walker Roofing assigned to Developers Surety the company's right to payment under bonded contracts as security against any losses that Developers Surety might suffer under a bond. GDOC was not a party to the indemnity agreement. The bonds required Developers Surety, upon default of Walker Roofing, to "promptly remedy the default or defaults or to promptly perform the [c]ontract in accordance with its terms and conditions." It also specified that Developers Surety was to give GDOC notice "within twenty-five (25) days after receipt of a declaration of default of the surety's election either to remedy the default or defaults promptly or to perform the contract promptly."

Walker Roofing did not complete its work within the time frame required by the Contract, and GDOC declared Walker Roofing in default. On September 23, 2010, GDOC issued a formal notice of default with respect to the performance of Walker Roofing, thus triggering Developers Surety's obligations

3

under the performance bond. Developers Surety did not notify GDOC within 25 days of receipt of GDOC's notice of default regarding whether it would remedy the default or perform the contract. However, approximately three months after the declaration of default, Developers Surety gave GDOC the option of entering into a contract with another company for the completion of the work. GDOC then contracted with that company to finish the project. Under the payment and performance bonds and prior to Walker Roofing's default, Developers Surety had provided financial assistance to Walker Roofing in the amount of $577,118.60; it incurred an additional $160,161.39 in costs and attorney fees arising from its investigation of its liability, if any, under the default.

On July 12, 2011, Developers Surety filed suit against GDOC for breach of contract and for a declaratory judgment that it had no obligation under the payment and performance bond it issued to Walker Roofing on behalf of GDOC. GDOC filed a counterclaim for breach of contract. The parties filed cross-motions for summary judgment, and the trial court determined that Developers Surety's claims were not barred by sovereign immunity and that GDOC had breached the construction contract as a matter of law. It concluded that GDOC waived its sovereign immunity by entering into the contract with

4

Walker Roofing, and that the doctrine of equitable subrogation gave Developers Surety the ability to file suit against GDOC once it incurred liability and paid the obligations of its principal under the bond. Consequently, the trial court granted summary judgment to Developers Surety and denied it to GDOC; in the same order, the trial court entered judgment in favor of Developers Surety in the amount of $577,118.60.

GDOC appealed to the Court of Appeals, contending, inter alia, that it was entitled to summary judgment because Developers Surety was not a party to the Contract, and thus, the State's waiver of sovereign immunity for breach of contract did not apply to Developers Surety.[4] The Court of Appeals affirmed the trial court's findings that GDOC waived sovereign immunity by entering into the Contract, and that the doctrine of equitable subrogation gave Developers Surety the ability to "step into the shoes" of Walker Roofing and file suit against GDOC.

---

[4]GDOC also contended that granting summary judgment to Developers Surety was unwarranted because the anti-assignment clauses contained in the Contract rendered any assignment by Walker Roofing to Developers Surety ineffectual, and because the trial court erred in finding that GDOC materially breached the Contract by imposing restrictions on Walker Roofing's access to the project site that were contrary to the Contract terms; GDOC further maintained that the trial court erred in dismissing its counterclaim asserting breach of the performance bond by Developers Surety in that Developers Surety did not comply with the terms of such bond. However, those portions of the opinion of the Court of Appeals rejecting these additional contentions by GDOC are not at issue in this appeal following the grant of certiorari to the Court of Appeals.

In Georgia, the doctrine of sovereign immunity has constitutional status, and such immunity may be waived only by an act of the General Assembly or by the Constitution itself. *Georgia Dept. of Corrections v. Couch*, ___ Ga. ___ (Case No. S13G1555, decided June 16, 2014); *Georgia Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593, 597–598, (755 SE2d 184) (2014). And, the Georgia Constitution provides for the waiver of the State's defense of sovereign immunity, "as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the [S]tate or its departments and agencies." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). OCGA § 50–21–1 (a) echoes this Constitutional provision:

> The defense of sovereign immunity is waived as to any action ex contractu for the breach of any written contract existing on April 12, 1982, or thereafter entered into by the state, departments and agencies of the state, and state authorities.

There is no doubt that by entering into the Contract, GDOC waived the defense of sovereign immunity for any breach of the Contract for which it could be held liable. Similarly, there is little question that Walker Roofing could maintain an action against GDOC for the alleged breach of the Contract. Thus, the next step in the analysis is the determination of the status of Developers

6

Surety as surety for Walker Roofing. OCGA § 10-7-56 provides that,

> A surety who has paid the debt of his principal shall be subrogated, both at law and in equity, to all the rights of the creditor and, in a controversy with other creditors, shall rank in dignity the same as the creditor whose claim he paid.

And, subrogation has been well-defined as,

> the substitution of another person in the place of the creditor, so that the person in whose favor it is exercised succeeds to all the rights of the creditor. It is of equitable origin, being founded upon the dictates of refined justice, and its basis is the doing of complete, essential, and perfect justice between the parties, and its object is the prevention of injustice.

*Bankers Trust Co. v. Hardy*, 281 Ga. 561, 562 (640 SE2d 18) (2007).

Thus, as subrogee of Walker Roofing, Developers Surety, stands in the place of Walker Roofing and may "succeed" to its rights. Id. In this case, Walker Roofing had a right of action, i.e., an action for breach of contract against GDOC. And, the plain language of the constitutional waiver of the State's sovereign immunity in the case of a suit for breach of a written contract entered into by the State expressly addresses the "action" itself, not the party bringing the action. See *Georgia Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 598 (2) (755 SE2d 184) (2014) ( ordinary signification is

7

to be given to words in construing a constitutional provision).

The action in this case remains one for breach of contract; it is not transformed into another cause of action, either legal or equitable, against GDOC merely because Developers Surety stands in the place of Walker Roofing as the subrogee. Compare *Georgia Dept. of Natural Resources v. Center for a Sustainable Coast*, supra. (sovereign immunity bars injunctive relief against the State at common law). Subrogation is merely a basis upon which Developers Surety, after having incurred liability and paid its bond obligations for its principal, can assert the claim for breach of contract initially belonging to its principal, Walker Roofing.

In its analysis, the Court of Appeals found persuasive the reasoning of *Insurance Co. of the West v. United States*, 243 F.3d 1367 (C.A. Fed., 2001). As noted, in that case, the surety of a contractor that had financed the completion of a government contract following the contractor's default sued the government directly to recover the remaining funds, and that federal court held that under the Tucker Act, 28 USC § 1491 (a)(1), the federal government's waiver of sovereign immunity for any claim founded upon an express or implied contract with the United States applied to the subrogees as well as to the original

8

parties to the contract. A pivotal point in that federal court's analysis was the fact that the Tucker Act waived immunity as to claims, not particular claimants. *Insurance Co. of the West v. United States*, supra. As discussed, our constitutional provision waiving sovereign immunity for actions sounding in contract also does so expressly in terms of "actions," not parties. Furthermore, as noted by that federal court, there is nothing novel about employing the doctrine of equitable subrogation in regard to claims by sureties against the government. Indeed, there is a tradition in federal law of permitting a surety to succeed to the contractual rights of a contractor against the government in the circumstances in which the surety takes over contract performance or when it finances completion of the defaulted contract. Id. at 1370, citing *Prairie State Bank v. United States*, 164 U.S. 227, 231 (17 SCt 142, 41 LEd 412) (1896). So too, there is long recognition in this State of the precept that a surety who has paid the debt of its principal may sue on the original indebtedness in an action to enforce a legal right, such as an action for breach of contract. See *Fender v. Fender*, 30 Ga. App. 319 (117 SE 676) (1923); *Lumpkin v. Mills*, 4 Ga. 343 (1848). This is consistent with the fact that the right of subrogation is an inchoate one, which becomes choate when the surety is called upon to perform

its obligation under a payment or performance bond. *Cotton States Mut. Ins. Co. v. Citizens and Southern Nat. Bank*, 168 Ga. App. 83, 86 (1) (308 SE2d 199) (1983).

It is noteworthy that the General Assembly has provided that a payment bond is mandated for all State public works construction contracts with an estimated contract amount greater than $100,000.00, and that the State may require such a bond for public works construction contracts that are estimated to be less than that amount. OCGA § 13-10-60. Thus, at best, it would be inconsistent, and at worst, unjust and impractical, to require a surety's bond to ensure payment or performance in favor of the State in the case of a defaulted construction contract with the State, but then to bar the surety from exercising its right of subrogation in an action for the breach of the contract in the event that the State is the defaulting party. As the Court of Appeals quite aptly noted, to raise the complete defense of sovereign immunity in such a case would be to discourage businesses from issuing payment or performance bonds for the benefit of the State. *State Dept. of Corrections v. Developers Sur. and Indem. Co.*, supra at n.4. Inasmuch as a fundamental purpose of sovereign immunity is the protection of State funds, this Court will not sanction a result that is

10

contrary to the constitutional and statutory text and would hamper the issuance of such payment and performance bonds, and thus, potentially cause greater exposure of the State's treasury and resources. *Georgia Dept. of Corrections v. Couch*, supra.

Simply, there is waiver of the State's sovereign immunity in this case of a claim asserted by a surety on a contract with the State.

Judgment affirmed. All the Justices concur.