**THIRD DIVISION
BARNES, P. J.,
BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 20, 2014**

# In the Court of Appeals of Georgia

A14A1449. HOUSTON et al. v. FLORY et al.

BRANCH, Judge.

In 1998, a father divided approximately 10 acres of land into two parcels and conveyed one each to his son, Earnest Smith, and daughter, Rebecka Flory. The two conveyances included mutual easements over three gravel drives located on the properties, two of which were clearly marked on plats referenced in each deed; the deeds provided only a description of the third gravel drive. Years later, after Michael and Kylie Houston acquired the son's parcel in a foreclosure sale, a dispute arose as to the location and enforceability of the third easement. Smith and Flory therefore filed suit seeking a declaration of their rights. Upon cross motions for summary

judgment by the Houstons and Smith, the trial court ruled in favor of Smith and Flory[1]; the Houstons appeal. For the reasons that follow, we affirm.

On appeal from the grant of summary judgment, appellate courts "conduct[] a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Shekhawat v. Jones*, 293 Ga. 468, 469 (746 SE2d 89) (2013) (citation and punctuation omitted); *Ga. Dept. of Corrections v. Developers Sur. & Indem. Co.*, 324 Ga. App. 371, 372 (750 SE2d 697) (2013).

Construed in favor of the Houstons, the record shows that on October 23, 1998, James Earl Smith divided his 10.2 acre tract of land by conveying a 7.64 acre tract to Smith[2] ("Tract 2"); the conveyed tract's northern boundary is both the boundary line with the remaining parcel ("Tract 1") and a land lot line separating Land Lots 7 on

---

[1] Although Flory did not file a motion for summary judgment, the trial court granted summary judgment in favor of both Smith and Flory. But, as the Houstons acknowledge, under Georgia law, a trial court may grant summary judgment sua sponte. *Ga. Receivables v. Te*, 240 Ga. App. 292 (523 SE2d 352) (1999). "In fact, the trial court can grant summary judgment to the "non-moving party provided that the grant is proper in all other respects." Id.

[2] Unless otherwise shown, "Smith" when used herein refers to Earnest Smith, the son.

the north, and 8 on the south, of the 5th Land District in Rabun County. The Smith deed references a survey plat dated August 31, 1996. The plat shows the 7.64 acre tract (a/k/a "Tract 2") as a roughly square parcel below the land lot line immediately south of a rectangular portion of the smaller tract (a/k/a "Tract 1"); on the western end of the rectangular part of Tract 1 is an additional triangular-shaped area of Tract 1 through whose northernmost tip a gravel road enters the property with the same road also providing access to Tract 1 at its western end. The deed to Smith describes this gravel "road" as Gipson Road, a county road, and describes the three gravel "drives" as follows:

> Also, as shown on said plat, two (2) gravel drives extend in a Southerly direction from said gravel road and into that portion of said 10.20 acre tract of land that lies in Land Lot 8 of the Fifth land District of Rabun County, Georgia. *Also there is a gravel drive that is not depicted on said plat that extends in an Easterly direction along the land lot line from the Easternmost gravel drive that is depicted on said plat. Said gravel drive terminates within the boundaries of said 10.20 acre tract of land.*

(Emphasis supplied).

On December 4, 1998, James Earl Smith conveyed Tract 1 to Flory.[3] The deed references a survey plat dated November 12, 1998.[4] The Flory deed contains essentially the same description of the three gravel drives as the Smith deed:

> Also, as shown on said plat, two (2) gravel drives extend in a Southerly direction from said gravel road and into said Tract 2. *Also there is a gravel drive that is not depicted on said plat that extends in an Easterly direction along the Northerly line of said Tract 2 and Southerly line of Tract 1 from the Easternmost gravel drive that is depicted on said plat. Said drive terminates within the boundaries of said Tract 1 and Tract 2.*

(Emphasis supplied).

Each deed also describes the conveyance of the easements in similar, but not identical, language. The Smith deed first grants to Tract 2 easements for access to Gipson Road; it then subjects Tract 2 to an easement along the third gravel drive thereby giving "additional road access" to Tract 1:

> ALSO CONVEYED is a perpetual, non-exclusive road right of way easement over and across said gravel road and the three (3) above described gravel drives for the purpose of providing road access to and

---

[3] Flory never lived on Tract 1 after she became the owner.

[4] The plats referenced in the Smith and Flory deeds are almost identical in all relevant details.

from [Tract 2] with Gipson Road, a public road. [Tract 2] is conveyed SUBJECT TO *those portions of the same lying within the bounds of said gravel drive that runs along said land lot line.* That said gravel drive will also be used to provide additional road access to [Tract 1].

(Emphasis supplied). In the easement-conveyance language of the Flory deed, there appears to be a typographical error, as indicated in the following quotation, that is not relevant to the issue presented in this appeal. Reading out the typographical error, the Flory deed first subjects Tract 1 to the easements previously granted to Tract 2; it then grants to Tract 1 an easement over the third gravel drive, thereby providing access to Gipson Road:

> The above described Tract 2 [(sic)] is conveyed SUBJECT TO the three (3) above described drives in that said drives provide road access to Tract 2 from Gipson Road, a public road. ALSO CONVEYED is a perpetual, non-exclusive road right of way easement over and across *said gravel road that lies along the property line* that divides Tract 1 from Tract 2 for the purpose of providing road access to and from [Tract 1] with Gipson Road, a public road.

(Emphasis supplied).

As can be seen, the two significant asymmetries in the language of the deeds are that the Smith deed specifically subjects those portions of Tract 2 "lying within

5

the bounds of said [third] gravel drive" to the disputed easement in favor of Tract 1; there is no corresponding language in the Flory deed. The Smith deed also states that the third gravel drive provides "additional road access" to Tract 1.

Both deeds also grant the respective owners rights to water from a spring located to the east of both parcels and running across Tract 1 to Tract 2 near the end of the disputed easement; the spring supplies water for Tract 1. Finally, Smith, who lived on the greater tract since the late 1970s, no longer has any ownership interest in Tract 2; his only interest in Tract 1 is that he leases, apparently with an option to purchase, the triangular portion of Tract 1 from his sister, where he lives with his family and helps maintain Tract 1 and the water system. Smith and Flory's parents reserved a life estate in Tract 1 and they lived on the property until their deaths in 2011.

In 2007, Smith lost title to Tract 2 in foreclosure. On July 30, 2009, the Houstons purchased Tract 2 from CitiMortgage, Inc. The Houstons' deed provides for the same easements as the Smith deed and it references the same plat referenced in the Flory deed. The Houstons' deed includes essentially the same language found in the Smith deed that established the easement for the third gravel drive, including part of the asymmetrical language noted above:

6

Also there is a gravel drive that is not depicted on said plat that extends in an easterly direction along the northerly line of the above conveyed tract 2 from the easternmost gravel drive that is depicted on said plat. Said drive terminates within the boundaries of said tract 1 and tract 2. . . . [Tract 2] is conveyed subject to those portions of the same lying within the bounds of said gravel drive that runs along said northerly line of tract 2 in that tract 1 is also served by said road.

Just prior to closing on the purchase, the Houstons commissioned a survey of Tract 2. Neither the survey nor the Houstons' own inspection revealed a gravel drive running exactly along the northern property line to Tract 2.

Flory and Smith, however, presented evidence that the third gravel drive lies mostly south of the property line between Tract 1 and Tract 2 and protrudes some 20 to 25 feet onto Tract 2 in order to go around an embankment that extends onto Tract 2 and descends approximately 10 feet from Tract 1 to the third gravel drive; a septic tank was placed in the embankment in the late 1970s by their father. Smith averred that "[t]he curvature in the easement road around the embankment runs for a distance of approximately 150 feet before turning back toward the land lot line." Flory added, "that's where it's always been." In their depositions, both Flory and Smith drew indications on the relevant plats to show where they contend the third gravel drive has been located since their father owned both tracts. Smith also averred that he, his

sister, and other members of their family, as well as Georgia Power, have used the easement road at issue for many years and that without access to the easement road, large portions of Tract 1 would be inaccessible, in part because of hilly terrain. The easement road provides access to the water system on the eastern portion of Tract 1, which Smith maintains, as well as a barn built on Tract 1 prior to 1998. Smith averred that the easement was graveled when it was originally cut but that, although the gravel has not been refreshed since the late 1980s, years of frequent use have "worn a clear path in the road and packed the red clay down so that it can now be driven on without gravel."

After the Houstons purchased Tract 2, they attempted to prevent Flory and Smith from using the path that Flory and Smith contend is the easement. Flory and Smith therefore filed suit seeking a declaration of their rights. The Houstons answered and argued that the relevant easement was not enforceable and had been abandoned. They also counterclaimed for a declaration of their rights and alleged that Smith and his sons had damaged Tract 2 and that Smith had blocked the Houstons' access to Gipson Road. The Houstons sought damages, demanded that any obstruction be removed, and requested attorney fees and punitive damages. Following discovery, the Houstons moved for partial summary judgment seeking to establish

that the easement for the third gravel drive is not valid and enforceable; Smith filed a cross-motion on the same issue. Following a hearing, the trial court issued a thorough order and found that the description of the easement in the relevant deeds was sufficient to establish the location of the easement with reasonable certainty, that the Houstons had constructive notice of the easement through the chain of title, and that there was no evidence that Smith and Flory had abandoned the easement. The trial court therefore denied the Houstons' motion for partial summary judgment and granted Smith's opposing motion. The Houstons' counterclaims remain pending below. The Houstons contend the trial court erred by denying their motion and granting Smith's motion.

1. There is no dispute that the deeds, including the Houstons' deed, establish an express easement over a third gravel drive and that the Houstons had actual and constructive knowledge of the language in the deeds. The question before us is whether the description of the easement is too vague and indefinite to be enforced.

A description of land in a deed need not be perfect to be valid. *CDM Custom Homes v. Windham*, 280 Ga. App. 728, 733 (3) (634 SE2d 780) (2006). "A deed is sufficient to pass title, and will not be declared void for uncertainty of description, if the descriptive averments are certain, or if they afford a key by which the land can be

definitely located by the aid of extrinsic evidence." *Deaton v. Swanson*, 196 Ga. 833, 835 (1) (28 SE2d 126) (1943) (citations omitted). See also *Glass v. Carnes*, 260 Ga. 627, 632 (4) (398 SE2d 7) (1990) ("the description of the easement in the deed is sufficient if it provides a key so that the land whereon the easement is located can be identified"), citing *Champion v. Neason*, 220 Ga. 15 (136 SE2d 718) (1964). Without a sufficient key in the deed, extrinsic evidence cannot be added to complete the description. *Hedden v. Hilton*, 236 Ga. 641-642 (225 SE2d 39) (1976). Whether a description in a deed is sufficient to convey property is a question of law for the court. *Murdock v. Ward*, 267 Ga. 303, 304 (1) (477 SE2d 835) (1996).

In *Champion*, a grantor conveyed title to certain property and reserved for herself "the right to use the private driveway as presently located for ingress and egress to her property located immediately to the rear of the above described property." *Champion*, 220 Ga. at 15. When successors in interest to the servient estate brought suit against the successor in interest of the dominant estate, the trial court refused to enjoin the dominant estate holder from using the easement. Id. (punctuation omitted). On appeal, the Supreme Court affirmed and held that the words "the private driveway as presently located" furnished a key to the identification of the easement. Id. at 16. In *Turner v. City of Tallapoosa*, 289 Ga. 138, 141 (1) (709 SE2d 211)

10

(2011), the Supreme Court affirmed summary judgment against landowners who claimed an easement over adjoining land by looking to "plentiful" extrinsic evidence showing that the city intended to grant the landowners title only to the unused roadbeds located on their property and not the extension of the roadbed across the adjoining land.

Here, the deeds provide a sufficient key to the location of the easement at issue such that extrinsic evidence may be added to determine its precise location. The deeds specify the general location and direction of the easement as running along the property line between Tract 1 and Tract 2 in an easterly direction. And the term "along" can mean something less than precisely tracking another thing.[5] The deeds also specify the starting point as the easternmost gravel drive depicted on the relevant plats. And the deeds specify the end point as terminating within the boundaries of the two tracts. The one asymmetry in the language of the Houstons' deed mentioned above suggests that the gravel drive falls mainly or entirely on Tract 2. These details in the deeds therefore present a sufficient key to allow introduction of extrinsic

[5] For example, "along" can mean "through, on, beside, over, or parallel to the length or direction of; from one end to the other of." See www.Dictionary.com. Another definition provides "Extending in a more or less horizontal line on." See www.oxforddictionaries.com. See also The American Heritage Dictionary of the English Language (1981) (along can mean "following the length or path of").

evidence. Compare *Smith v. Tolar*, 281 Ga. App. 406, 408 (636 SE2d 112) (2006) (description of easement insufficient where it did not "clearly identify the dimensions of the easement or where it begins, leads, or ends").

In addition to the key to the location of the easement provided by the language of the deeds, the appellees presented ample and undisputed evidence that a drive in the approximate location of the third gravel drive described in the deeds has existed since 1978, that since that time it has always curved around an embankment as it runs in an easterly direction toward the back of Tract 1, and that it has never been located on the embankment itself running in a straight line precisely along the property line. For these reasons the trial court did not err in holding as a matter of law that the relevant deeds were sufficient to pass title to an easement located on the path described by Flory and Smith. *Turner*, 289 Ga. at 141 (1).

2. The Houstons argue that even if an easement was granted, there is an issue of fact as to whether it was abandoned. The trial court disagreed.

"An easement may be lost by abandonment or forfeited by nonuse if the abandonment or nonuse continues for a term sufficient to raise the presumption of release or abandonment." OCGA § 44-9-6. But for easements acquired by grant,

"mere nonuser[6] without further evidence of an intent to abandon such easement will not constitute an abandonment." *Hardigree v. Hardigree*, 244 Ga. 830, 831 (2) (262 SE2d 127) (1979) (citation omitted). As stated by the Supreme Court,

> The law does not favor the extinguishment of easements, and an easement acquired by grant is not extinguished merely by nonuse; there must be clear, unequivocal, and decisive evidence of an intent to abandon the easement.

*Whipple v. Hatcher*, 283 Ga. 309, 310 (658 SE2d 585) (2008) (citations omitted). No such evidence was presented here.

The Houstons averred that at the time they purchased the property, an electric fence was present on their property that ran along the easternmost gravel drive shown on the plats and that the fence blocked the roadway claimed by Smith and Flory. But Flory testified that the fence could be clipped and unclipped to travel on the easement. And Smith gave undisputed testimony that he, Flory, and his family had made use of the easement ever since his father conveyed the easements in 1998, including to maintain the water lines that come from the spring and which provide

---

[6] Black's defines "nonuser" as "[t]he failure to exercise a right (such as a franchise or easement), as a result of which the person having the right might lose it." Black's Law Dictionary (9th ed. 2009).

13

water to Tract 1, as well as to access the barn/shed on the eastern end of Tract 1. This evidence does not constitute clear, unequivocal, and decisive evidence of an intent to abandon the easement as required by law. Finally, the Houstons have not shown that failure to refresh the gravel on the disputed drive makes it impassible to travel. And Smith testified that the drive is functional without gravel. Thus, this evidence too is insufficient to show abandonment of the easement.

3. The Houstons also contend that Smith was not entitled to summary judgment in his favor because he is not an owner of any relevant land but rather only has a lease with option to purchase a portion of Tract 1; that any such lease must be in writing in accordance with the statute of frauds; and that the portion of Tract 1 that he leases is not connected to the easement at issue. These assertions, however, were not raised and ruled on by the court below. Accordingly, these issues present nothing for this Court to review. See *Covington v. Johnson*, 284 Ga. 426 (667 SE2d 618) (2008). Moreover, the case remains pending below on the Houstons' counterclaims, and the trial court has yet to enter a final judgment declaring relief to the appropriate party.

For all of the above reasons, the trial court correctly granted summary judgement on the issue of the validity of the disputed easement.

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur.*